# Richmond

ANTHONY F. DISTEFANO V. COMMONWEALTH OF VIRGINIA.

June 22, 1959.

Record No. 4970.

Present, Eggleston, C. J., and Spratley, Buchanan, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*Leslie M. Mullins* (*Fred B. Greear; Greear, Bowen, Mullins & Winston*, on brief), for the plaintiff in error.

*Thomas M. Miller, Assistant Attorney General; A. S. Harrison, Jr., Attorney General*, for the Commonwealth; submitted on brief.

SPRATLEY, J., delivered the opinion of the court.

This proceeding was begun in the Juvenile and Domestic Rela-

tions Court of the County of Wise, upon a complaint filed by Lillian Distefano against Anthony F. Distefano. The complaint alleged that the defendant had unlawfully refused and failed to provide for the support of the complainant, his wife, and two children under the age of 18 years, "acknowledged as his own." Virginia Code, 1950, § 20-61. After a hearing, the Judge of the Juvenile and Domestic Relations Court found the defendant guilty, placed him on probation, and entered an order directing him to make certain payments for the maintenance and support of the children.

The defendant duly perfected an appeal to the Circuit Court of Wise County. The evidence there presented was not in material conflict.

The prosecuting witness, who called herself Lillian Distefano, was born Lillian Baber. She married Atler Stanley in 1944, and Stanley was granted a decree of divorce on February 25, 1952.

Anthony F. Distefano, the defendant, is a doctor of medicine, a married man, and is, and has been, engaged in the practice of medicine. He was separated from his wife who lived in Pennsylvania.

Mrs. Stanley testified that in 1947, she consulted the defendant at his office in Trammel, Virginia, for medical treatment; that shortly thereafter they began having sexual relations which continued from 1947 to 1956, inclusive; and that out of those relations two children were born, one, a girl on February 14, 1949, given the name Frances Distefano, and the second, a boy, born March 3, 1951, named Anthony F. Distefano, III. The defendant arranged for the medical and hospital care of the mother and children at childbirth, and was listed on the birth certificates of the children as their father.

The evidence is clear and overwhelming that Mrs. Stanley and the defendant lived together as man and wife at several places, including St. Paul, Virginia, under the names of Dr. and Mrs. A. F. Distefano. Defendant introduced the woman as his wife, and the boy and girl as his children to a great many people, including the Chief of Police of St. Paul. After six or seven years of illicit cohabitation, Mrs. Stanley expressed the desire that the defendant marry her. When he refused to do so, because he was already married and had been unable to obtain a divorce, she left the apartment in which they had been living together. She then began an amorous affair with another man and her letters to that man portray a mad infatuation for him.

Mrs. Stanley testified that she assisted the defendant in getting

"the figures when he was fixing out his income tax returns for the years 1949-1956, inclusive." Over the objection of the defendant and despite his claim that the tax returns constituted the best evidence, she was allowed to testify that Distefano listed the two children, Frances and Anthony F. as his daughter and son, on both State and Federal returns; that on the Virginia returns he listed her as his wife; and that he listed his real wife's name on the Federal returns, and his three children by that wife on all of his returns.

No original returns or copies of them were placed in evidence. There was no evidence that they were unavailable, or were made voluntarily, or under oath. The Commonwealth Attorney said to the court, "I am going to introduce them." Mrs. Stanley, when asked if she had a copy of the returns, replied: "No, but I could get them very easily."

There were numerous quarrels between Mrs. Stanley and Distefano about financial matters and their relation to each other. She took her two children and went to her mother's home in Pennsylvania. While there she learned that the defendant had recently been divorced from his wife, so she returned to St. Paul. She then found that Distefano planned to marry someone else. She demanded support for herself and the two children.

On April 16, 1956, defendant gave Mrs. Stanley a letter in which he agreed to pay her $200 a month "for the upkeep of *her two children, Frances and Anthony Distefano*, until their eighteenth birthdays, respectively, or until Mrs. Lillian Distefano again marries." (Italics added.) This agreement, we are told, he did not keep. Thereupon she caused this proceeding to be instituted.

It is not contended by the Commonwealth that the defendant ever admitted that he was the father of the children before any court. The Commonwealth argues that the defendant "voluntarily admitted paternity in writing, under oath," Code of Virginia, 1958 Cum. Supp. § 20-61.1, in signing his Federal and State income tax returns for the years mentioned.

Nine instructions were given to the jury. In Instruction "A," the court told the jury that if they believed from the evidence that "the defendant acknowledged paternity of the children on his income tax returns, then the Court tells the jury that an income tax return filed under the penalties of perjury is equivalent to" a voluntary admission of paternity, in writing, under oath.

Defendant objected to that instruction and to two others, one re-

lating to the measure of punishment and the other to the credibility of witnesses, on the grounds that they were contrary to the law and the evidence, and without evidence to support them. He opposed the admission of testimony regarding the contents of his tax returns on the specific ground that the returns themselves were the best evidence, and it had not been shown that they were unavailable. *Butts v. Commonwealth*, 145 Va. 800, 133 S. E. 764.

After hearing the evidence and the instruction of the court, the jury returned the following verdict:

"We the jury believe the defendant to be the father of the two children in question and find him guilty of nonsupport of said children and order him to forfeit $1,000 bond for the sole support of children—In lieu of jail sentence of 12 months on State Convict Road Force and fine of $500.00."

The court overruled defendant's motion to set aside the verdict, and entered the following judgment, which is at variance both with the verdict and the provisions of § 20-61, Code of Virginia, 1958 Cum. Supp., the applicable statute. The judgment ordered that the Commonwealth recover of the defendant for the benefit of his two infant children a forfeiture in the amount of $1,000, payable to the mother of the said children for their sole use and support. It further directed that if default be made in the payment of the forfeiture by the defendant that "he is hereby sentenced to confinement on the State Convict Road Force of this State for the period of twelve months; that during such confinement the State Highway Commissioner pay the sum of $15 per week for each of the two children out of funds appropriated for construction and maintenance of highways, with the right of the defendant, in lieu of said sentence on the State Convict Road Force, to execute a bond for the payment of said forfeiture to be approved by the court, * * *" and that the Comomnwealth recover of the defendant "the sum of $500 for fine and its cost," and, "If default be made in the payment of said fine and cost, and the same be not paid at or before the expiration of the said sentence on the State Convict Road Force that he (the defendant) be, and is hereby sentenced to additional confinement on the State Convict Road Force for the time prescribed by law in such cases made and provided for nonpayment of said fine and cost."

The defendant contends that the court erred in refusing to strike the evidence, both at the conclusion of the Comomnwealth's evidence and at the conclusion of all the evidence, in admitting im-

proper evidence, and in giving and refusing certain instructions. He contends moreover, in this Court for the first time, that, under the circumstances, the question "whether or not defendant has voluntarily admitted paternity in writing, under oath" was one of law for the court and not one of fact for the jury.

Regardless of the merit of the several contentions made, the real issue is whether or not the income tax returns of the defendant, filed under the penalties of perjury, constituted a voluntary admission of paternity, in writing, under oath, as contemplated by § 20-61.1.

Subsequent to *Brown* v. *Brown*, 183 Va. 353, 32 S. E. 2d 79, decided in 1944, holding that in Virginia there was no legal duty on the part of a father of an illegitimate child to support such child, the General Assembly, Acts 1952, Chapter 584, amended Code of Virginia by the following enactment:

"Whenever in proceedings hereafter under this chapter (Chapter 5, Title 20) the court finds that the parents of a child are not married but that the father admits before the court that he is the father of the child, the court may then enter and enforce judgment for the support, maintenance and education of such child as if the child were born in lawful wedlock."

This statute was further amended and reenacted, Acts 1954, Chapter 577, as § 20-61.1, in the following language:

"Whenever in proceedings hereafter under this chapter concerning a child whose parents are not married, a man admits before the court that he is the father of the child or the court finds that the man has voluntarily admitted paternity in writing, under oath, the court may then enter and enforce judgment for the support, maintenance and education of such child as if the child were born in lawful wedlock."

Another amendment of § 20-61.1, by Acts 1958, Chapter 372, after the institution of this proceeding, is not material to this case.

Code, § 20-61, as amended, provides the penalty which may be applied upon a conviction under §20-61.1, classified as a misdemeanor.

Income tax returns are not statements voluntarily made but are declarations expressly required by law, with penalties provided for falsity. False statements in State returns are punishable under the law of Virginia and false statements in Federal income tax returns may be prosecuted only in the Federal courts. Cf. *In Re Loney*, 134 U. S. 372, 10 S. Ct. 584, 33 L. ed. 949.

A taxpayer, under both Federal and State statutes, is entitled to claim personal exemptions on his income tax returns, not only for his children but for a large class of relatives and other persons classified as his dependents. Title 26, U. S. C. A., subsection 152, I. R. C. 1954. Virginia Code, § 58-98, 1958 Cum. Supp.

There has been cited no statute which requires that either Federal or State income tax returns be made under oath. On the other hand, Title 26, U. S. C. A., § 6065 (a), I. R. C. 1954, provides that such returns "required to be made under any provision of the Internal Revenue laws or regulations shall contain or be verified by the written declaration that it is made under the penalties of perjury." In the following section 6065 (b), it is expressly provided that the requirement of an oath "shall not apply to returns and declarations with respect to income taxes made by individuals." Similar provisions were contained in prior revenue acts. See Annotation to § 6065.

The clear Congressional intent in eliminating the oath in the case of individual tax returns was merely to relieve the taxpayer of the burden of notarizing his returns, and to simplify the task of both the taxpayer and the Bureau of Internal Revenue in processing returns which might otherwise have to be returned to the taxpayer for compliance with an oath requirement. See note and annotation to Title 26, § 6065, U. S. C. A., I. R. C., 1954.

Section 58-27, Code of Virginia, 1950, provides that no return of income need be verified by the oath or affirmation of the person "required by law to sign the same but the signature of such person or persons to any such return shall be sufficient." It is made a misdemeanor for any person to wilfully subscribe to "any such return which he does not believe to be true and correct as to every material matter."

The Federal provision that the declaration shall be made under the penalties of perjury, and the Virginia statute making a wilfully false statement a misdemeanor, substitute, as a matter of convenience to the taxpayer, signed declarations in place of oaths or sworn statements. The mere fact that the punishment provided for a violation of Federal statute may be the same as that for the violation of an oath does not make the signed declaration an act under oath. It merely provides a punishment equivalent to that provided for the violation of an oath, duly administered.

It is significant that the jury found that "We the jury believe the defendant to be the father of the two children in question." The evidence amply supports that finding. In order to convict him under

§ 20-61.1, it was necessary for the Commonwealth to show that he had admitted he was the father of the children before a court having jurisdiction to try and dispose of the question, or that he had voluntarily admitted such paternity in writing, under oath. Neither the evidence nor the finding of the jury comes within the requirement and terms of § 20-61.1, as amended in 1954. The history and language of that section clearly show that its purpose is to require that the admission of paternity in writing, under oath, shall be positive, voluntary and affirmative.

We conclude, regardless of the admissibility of the evidence relative to the tax returns of the defendant, that the declarations therein made in such returns are not acts voluntarily admitting paternity in writing, under oath, as contemplated by Virginia Code, § 20-61.1, and, therefore, the evidence was insufficient to justify the jury or court in finding the defendant guilty under that section. For that reason, it is not necessary for us to consider the other assignments of error, however meritorious they may be.

The verdict of the jury is, therefore, set aside; the judgment reversed; and final judgment entered here dismissing the proceeding.

*Reversed and dismissed.*