George M. NIMMO, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 5019.

Supreme Court of Wyoming.

Nov. 19, 1979.

Terry W. Mackey, of Urbigkit, Mackey & Whitehead, P.C., Cheyenne, signed the brief and appeared in oral argument for appellant.

John D. Troughton, Atty. Gen., signed the brief and appeared in oral argument for appellee.

Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., retired.*

GUTHRIE, Justice, retired.

Appellant, George M. Nimmo, was found guilty of two counts of an indictment charging false swearing in violation of § 6–154.1, W.S.1957, as amended, now being § 6–8–102, W.S.1977, and it is from these convictions that he pursues this appeal. In his attack upon this conviction, four contentions are raised as follows:

1. This statute, now § 6–8–102, *supra*, is unconstitutionally vague and is in violation of Art. 1, § 6, of the Wyoming Constitution and the due process clause of the Fourteenth Amendment to the Constitution of the United States.

---

* ROONEY, J., having recused himself from participation in this case, GUTHRIE, J., retired, was assigned, having been retained in active judicial service pursuant to Art. 5, § 5, Wyoming Constitution, and § 5–1–106(f), W.S.1977, by order of this court entered on January 1, 1979.

2. Even if this statute is held to be constitutional, the indictment against appellant omitted a material element of the crime charged, denying him due process of law.

3. The trial court erred in limiting the cross-examination of DeLoyd Quarberg, a principal witness against defendant, for the purposes of attacking his credibility.

4. "The procedures followed by the State and the actions taken by the State throughout the proceedings when taken as a whole, deprived appellant of a fair trial in violation of the requirements of due process of law imposed upon the State."

We do not agree that any of these complaints require reversal of this case and will affirm.

### CONSTITUTIONALITY OF STATUTE

If appellant were correct in his contention that the statute upon which these convictions rest is unconstitutional, this matter would be closed and we would go no further. However, we do not agree with this contention. The statute upon which this attack is mounted is as follows:

"§ 6–8–102. *False swearing other than in judicial or administrative proceeding; false claim or voucher.*

"Whoever, under oath or affirmation lawfully administered in any matter where an oath is authorized by law to be taken, shall willfully, corruptly and falsely make any false certificate, affidavit, acknowledgment, declaration or statement of any nature other than in a judicial or administrative proceeding, or whoever submits a false claim or voucher under penalty of perjury, shall be guilty of false swearing, and upon conviction shall be imprisoned in the penitentiary not more than five (5) years. (Laws 1971, ch. 71, § 1)."

Appellant rests the claim of unconstitutionality upon the failure to include in this statute words which directly and specifically require intent or knowledge. In his view, the statute and particularly the phrases "false claim" and "under penalty of perjury" considered in combination or singularly do not include a requirement of specific criminal intent which is a necessary element in perjury statutes. However, in considering the question, we must also consider the effect of the phrase "shall be guilty of false swearing." The language of the statute indicates a legislative intent to create the crime of false swearing. Therefore, in deciding the question this court must examine the nature and elements of the crime of false swearing.

Although the term, false swearing, is used interchangeably with perjury, there is a definite distinction, both at common law and under usual statutory schemes. The principal distinguishing factor is that perjury is committed only in a judicial proceeding whereas false swearing is not necessarily committed in a judicial proceeding but is rather the giving of false statement under oath. 3 Anderson, *Wharton's Criminal Law and Procedure,* § 1295, p. 654 (1957). Furthermore, false swearing was recognized as a distinct crime at common law where it was defined as knowingly and intentionally giving under oath a false statement. *State v. Dowd,* 201 N.C. 714, 161 S.E. 205, 206 (1931); *State v. Coleman,* 117 La. 973, 42 So. 471, 472, 8 Ann.Cases 880 (1906); see also Perkins, *Criminal Law,* p. 454 (2d Ed. 1969); 60 Am.Jur.2d, *Perjury,* § 2, p. 967.

Our statute omits mention of these elements entirely. Appellant claims that the statute is facially unconstitutional because of the failure to specifically include as a part of this offense the element of intent. The State in its brief concedes that it has found no similar statute, or one which so attempts to define the offense of false swearing in this manner. Nor have we found any other state statute defining the crime of false swearing that does not refer to "willful submissions," "knowing submission" or "knowing and willful."

The State, however, contends that the legislature in enacting the statute intended to provide that "it was a crime for someone to submit an intentionally untrue claim or

voucher subject to and controlled by the elements of the crime of perjury," and argues in effect that the reference to perjury emphasizes the necessity of such intent. It has also been argued that the words "under penalty of perjury" represent the element scienter or *mens rea.* This language tracks our constitutional provision Art. 16, § 7, Wyoming Constitution, and various statutory enactments which appear largely directed at elimination of the necessity of appearance before an officer authorized to administer oaths. See illustratively §§ 27–12–201 and 37–8–410(a), W.S.1977.

Perhaps the most widespread employment of the phrase "under penalty of perjury" is upon the income tax return forms. The only pertinent authority which has come to our attention holds that Congress used this phrase in order to make it easier for the taxpayer to submit a return by allowing a signature rather than requiring the execution of a formally notarized return. *Cohen v. United States,* 9th Cir., 201 F.2d 386, 393 (1953); *Distefano v. Commonwealth,* 201 Va. 23, 109 S.E.2d 497, 500 (1959).

Cases involving prosecution for filing false tax returns verified in such a manner, however, are not helpful. The federal statute which authorizes the use of the phrase "under penalty of perjury" upon the return is separate and apart from the penal statute under which such violations are prosecuted. These later statutes include the elements of "willfully" and "known to him to be fraudulent or false." They have no applicability to our problem, and we find no help in the determination of our query whether this phrase itself creates an inference that the elements of perjury were included, by this reference, and made a part of the statutes.

 This court concedes that it has not found direct authority but finds that the phrase "under penalty of perjury" inferentially reflects the intentions of the legislature to require the element of intent. But such a phrase demonstrates the intent of the legislature to have it serve as an oath or affirmation. *People v. Coleson,* 25 Ill. App.3d 43, 322 N.E.2d 600, 602 (1975). Section 6–8–102, *supra,* serves as a legislative warning that the execution and filing of such vouchers is not a casual matter; the execution is no less solemn than a verification and may impress the signer more than a perfunctory notarization. *State v. Parmigiani,* 65 N.J. 154, 320 A.2d 161, 162 (1974).

 The issue that we must consider is whether § 6–154.1, *supra,* is unconstitutionally vague and thus violative of appellant's rights by virtue of Art. 1, § 6, Wyoming Constitution and the Fourteenth Amendment of the Constitution of the United States. Appellant asserts that because of the legislative failure to set out the elements of *mens rea* or intent that this statute is void because of vagueness and uncertainty. In making this argument, appellant relies upon this court's decision in *State v. Stern,* Wyo., 526 P.2d 344 (1974). There are, however, many factual distinctions which set *Stern* apart and make it inapplicable to the case at bar. It is to be noted that the present case deals with a common-law crime. A careful reading of *Stern* reveals that this court recognized the difference between common-law crimes and wholly statutory crimes. As this court said, " . . . because the offense declared in our statutes is not a 'larceny type' or 'burglary type' statute and therefore could not be said to carry with it the common-law concepts. . . . " *State v. Stern, supra,* 526 P.2d at 350. And this court placed emphasis upon words quoted from *State v. A. H. Read Co.,* 33 Wyo. 387, 240 P. 208, 212–213 (1925), in *Stern,* which also recognizes these distinctions. *Stern* warns that the guidelines set forth in the opinion are inapplicable in determining the validity of statutes involving common-law crimes, and the rule in *Stern* requiring a statement of intent is to be applied only to statutory crimes.

 Furthermore, we are not unaware of an old and firmly established rule that every law must be presumed to be constitutional and all reasonable doubt resolved in its favor. *Sanchez v. State,* Wyo., 567 P.2d 270, 274 (1977); *Burton v. Union Pacific Coal Company,* 18 Wyo. 362, 107 P. 391,

rehearing denied 112 P. 841 (1910); and numerous other cases collected in volume 2, West's Wyoming Digest and Pocket Part, *Constitutional Law,* keynumber 48. Nor should an overnarrow meaning be applied in disregard of an obvious legislative intent.

Next, appellant contends that under this statute a person may be punished for submitting an erroneous claim of any kind, which might be attributable to miscomputation, clerical mistake or typing error, unless the words, false, in its context, may be said to encompass "intentionally and knowingly." The State relies upon the proposition that the legislature intended to make it a crime "to submit an intentionally untrue claim or voucher." We believe it is ridiculous to impute to the legislature an intention to include innocent acts as criminal felonies.

This court could merely rely upon the word "false" in upholding the constitutionality of the statute. *Black's Law Dictionary,* pp. 721–722 (Rev. 4th Ed., 1968), demonstrates that when the word is used in varying situations it is given different definitions. However, the word is defined in *Black's Law Dictionary, supra,* in this manner:

"In law, this word usually means something more than untrue; it means something designedly untrue and deceitful, and implies an intention to perpetrate some treachery or fraud. . . . "

This definition has been adopted in *Lanier v. State,* Alaska, 448 P.2d 587, 593 (1968); and *Wilensky v. Goodyear Tire & Rubber Co.,* 1st Cir., 67 F.2d 389, 390 (1933). *Commonwealth v. Kraatz,* 2 Mass.App. 196, 310 N.E.2d 368, 372 (1974), not only adopts this definition, but makes the following observation: " . . . The term 'false' has generally been interpreted as connoting intentional untruth. [Citing authorities.] . . " See *Wolfe v. Tri-State Insurance Company,* 10th Cir., 407 F.2d 16, 19 (1969), and cases collected in 16 Words and Phrases, p. 188, *et seq.,* and Pocket Part, pp. 33–34 (Permanent Ed.), holding that false means "intentionally untrue." We do not, however, rest our decision solely upon this basis because of other and more compelling reasons.

If this court were to define "false" in any such manner as to exclude scienter or *mens rea,* it would nullify this legislative enactment. " . . . It is contrary to reason to ascribe to a statute a meaning that will nullify its operation, if capable of any other interpretation. . . . " *DeHerrera v. Herrera,* Wyo., 565 P.2d 479, 482 (1977). It is plain from the words of the statute, Ch. 71, S.L.1971, that the legislature intended to recognize the common-law crime of "false swearing" when it said "AN ACT defining the crime of false swearing, providing a penalty therefor, and repealing . . . ," in the title. We find it impossible to ascribe to our legislature any intention to penalize a person for making an innocent clerical error or mistake; this is because of the legislative reference to the words false swearing, the widely used criminal definition of false, and the reference to the penalties for perjury.

The legislature was directing its action to the crime of willful and fraudulent submission of false vouchers against the State. The 1971 act brought into the body of our law the common-law crime of false swearing, and the definition contained in the common law will be applied. The court in *State v. Di Paglia,* 247 Iowa 79, 71 N.W.2d 601, 604, 49 A.L.R.2d 1223 (1955), clearly explains this rule:

"In creating an offense the legislature may give it a name known to the common law, without further defining it, or the statute may expressly refer to the common law for definition. In such instances the common law definition will be applied. On the other hand, the legislature may define the offense by a particular description of the act or acts constituting it. [Citing cases.] It is the rule that 'if the statute clearly defines the thing or act which is forbidden, a resort to common-law definitions to add to or detract from the effect of the language of the statute is neither necessary nor permissible.' . . . "

This case is of particular significance because of the fact that the State of Iowa

does not recognize common-law crimes, although the court has relied upon the elements of common-law crimes in interpreting and defining the statutory crimes; and this includes the common-law elements of false swearing. *State v. Bigelow,* 76 Ariz. 13, 258 P.2d 409, 411–412, 39 A.L.R.2d 979 (1953), holds:

" . . . If it [the crime] did exist at common law the court may supply any statutory defect in its definition by application of the common-law elements of the particular crime in question. . . . "

1 Burdick, *Law of Crime,* § 92, p. 98 (1946), sets out this generally applicable rule:

"However, in these states, as in all jurisdictions, both state and federal, regardless whether offenses are purely statutory or not, the common law is constantly invoked for the purpose of definition and elucidation. For instance, if, in a jurisdiction where there are no common-law offenses, the statutory crime is also a common-law crime, but the statute gives no definition of the crime, then resort must be made to the common law for the definition. Thus, a statute may provide that murder shall be punished with a certain penalty, but nowhere in the statute-book is murder defined. In such a case the legislature must have intended that the word 'murder' in the statute meant the same thing as murder in the common law, and, therefore, one must look to the common law for information concerning the elements of this crime." (Footnotes omitted.)

See also *Moser v. State,* 91 Nev. 809, 544 P.2d 424, 426 (1975); *State v. Ingland,* 278 N.C. 42, 178 S.E.2d 577, 581 (1971); *Gallegos v. People,* 159 Colo. 379, 411 P.2d 956, 960 (1966); and 21 Am.Jur.2d, *Criminal Law,* § 13, p. 93; 2A Sutherland Statutory Construction, § 502, p. 274, *et seq.,* (Sands 4th Ed.).

Of further interest and applicability is *United States v. Johnson,* 4th Cir., 419 F.2d 56, 60, *certiorari denied* 397 U.S. 1010, 90 S.Ct. 1235, 25 L.Ed.2d 423 (1969), in which the court stated:

". . . Among them is his contention that 18 U.S.C. § 281 (1958 ed.) is unconstitutional on the ground that it fails to require scienter. The indictment charged, and the district court expressly found, that Johnson acted 'knowingly'. Johnson, however, argues that neither the indictment nor the court's findings can supply the missing element of scienter to the statute. Courts, however, can read scienter into a statute when it appears Congress implicitly intended that it must be proved. . . . " (Footnotes omitted.)

For these reasons, we cannot hold the challenged statute unconstitutional, nor do we find that it violates Art. 1, § 6, of the Constitution of Wyoming or the Fourteenth Amendment to the Constitution of the United States.

## SUFFICIENCY OF THE INDICTMENT

Appellant's contention is that the indictment was fatally defective because it made no direct reference or mention of criminal intent and that this has deprived him of due process under Art. 1, § 6, *supra,* and the Fourteenth Amendment, *supra.* The first count of the indictment, which is identical to the second count and against which this argument is lodged, states as follows:

"*COUNT I*

"GEORGE M. NIMMO, on or about the 28th day of June, 1977, in the County of Laramie, in the State of Wyoming, as Acting Director of the Division of Criminal Investigation, Office of the Attorney General, State of Wyoming, *did unlawfully and feloniously submit a false claim or voucher under penalty of perjury, . .*" (Emphasis added.)

The answer to this contention lies in *Gonzales v. State,* Wyo., 551 P.2d 929, 931 (1976). This court in *Gonzales,* citing exhaustive authority, holds that the use of the word "feloniously" carries with it the same meaning as the word "intentionally." Criminal intent is implied from the use of the word feloniously. *Gonzales* also sets out the rule that a criminal indictment is

sufficient if it alleges enough to allow the accused to understand and recognize the charge and to prepare his defense. No argument is made that the appellant in this case did not know what he was charged with nor is it asserted that the indictment was not drawn in such manner as to enable him to meet it. Therefore, we find that the indictment was not fatally defective.

## IMPROPER RESTRICTION OF CROSS–EXAMINATION

Appellant's complaint in this particular is based upon what he deems to be an improper restriction by the trial court in the cross-examination of a witness, Quarberg. He claims a violation of Art. 1, § 10, Wyoming Constitution, and the Sixth Amendment to the United States Constitution insofar as he was denied the opportunity to properly confront and to cross-examine this witness as to his credibility.

Appellant pictures Quarberg as a principal or critical witness in the case at bar. Quarberg was the only witness who testified to a conversation of the appellant in which he discussed filing questionable claims. However, Quarberg's testimony merely reiterated other evidence presented at the trial.

Quarberg, upon direct examination, testified that Nimmo told him that he was paying $11.00 per day for a room at Little America. Quarberg went with Nimmo to Little America so that Nimmo would get a receipt for the room for $14.50, because he could not collect his full $25.00 per diem if the room rate was only $11.00 per day. He also told Quarberg that the attorney general was trying to work out something and to clarify the situation. Quarberg afterward saw a receipt and voucher for the charges which appeared as $14.50 per day for the room rented by Nimmo. Cooley, the manager of Little America and another witness for the State, testified that he gave appellant the rate of $11.00 per day for his motel room and that Nimmo, afterward, came to him and obtained receipts showing a rate of $14.50 per day. He gave Nimmo these receipts, although the rate was $11.00 per day because Nimmo told him he needed the receipts. Holding, a defense witness on cross-examination, testified that he knew the room rate was $11.00 per day and that appellant had asked for a receipt showing a rate of $14.50. Mendicino, another defense witness, testified he knew that Nimmo was charged $11.00 per day for his room.

The record reflects that Quarberg's testimony is cumulative. This belies the contention that he was a principal or critical witness. The argument of the appellant does not challenge the facts to which Quarberg testified.

This does, however, raise a very interesting question as to the manner in which Nimmo could be prejudiced because of a refusal to allow questions of this character attacking the credibility of the witness Quarberg after he has testified to conversations referring only to facts about which there is really no question and to which no challenges are made. We have recognized before that an improper limitation of cross-examination may not be prejudicial. *State v. Jackson*, 75 Wyo. 13, 291 P.2d 798, 804 (1955). While it must be conceded that a defendant has an absolute right to cross-examine a witness about anything which was the subject of direct examination, there is a distinction between a denial of cross-examination and its limitation. The extent and manner of a witness' cross-examination in such cases is in the court's discretion. *Eads v. State*, 17 Wyo. 490, 503, 101 P. 946 (1909); *Benham Construction Company v. Rentz*, 69 Wyo. 176, 192, 238 P.2d 927, 933 (1951); See, *Pack v. State*, Wyo., 571 P.2d 241, 246 (1977); Rules 608(b) and 403, W.R.E. A trial court's discretionary ruling on evidence will not be upset except for clear abuse which is appellant's burden to demonstrate. *Boggs v. State*, Wyo., 589 P.2d 839, 840 (1979); also, *Peterson v. State*, Wyo., 586 P.2d 144 (1978), and *Daellenbach v. State*, Wyo., 562 P.2d 679 (1977).

In *Salaz v. State*, Wyo., 561 P.2d 238, 241 (1977), the appellant argued that he was denied his Sixth Amendment right of confrontation when the court refused to allow

him to question a prosecution witness concerning juvenile convictions. This court held that the defendant was not prejudiced because the witness' bias and prejudice was shown during direct and cross-examination by testimony that established her "unsavory character." Likewise, in the case at bar the record reflects that Quarberg was a close friend of a man whom the appellant had replaced as the Director of the Division of Criminal Investigation; that the witness had applied for this particular job; and that Quarberg had informed the attorney general at the time of the appellant's appointment to the job that Quarberg would not follow Nimmo's orders. All of which demonstrated that Quarberg was neither a friend nor an admirer of Nimmo and which went to the credibility of the witness.

The offer of proof upon which appellant rests was a desire to examine this witness concerning thirteen vouchers which had been filed by Quarberg while he was employed by the department of the Division of Criminal Investigation and for which he had been paid. Appellant alleges that the vouchers are incorrect and contain errors and false statements. Appellant contends that this would have demonstrated that the witness was prone to make untrue statements. Even if the vouchers contained false statements, this would not reflect upon the credibility of the other witnesses, Cooley, Holding and Mendicino, who also testified.

Appellant places his reliance upon Rule 608(b), *supra*, to sustain his claim that such evidence should be received. The trial court, in obvious recognition of the relationship between Rules 608(b) and 403, *supra*, excluded this proffered evidence upon the basis that ". . . The potential probative value is substantially outweighed by the confusion of the issues that could result in this case by this evidence being presented to the jury." Rule 608(b) commits the question of the cross-examination of such witness upon specific instances of misconduct to the discretion of the trial judge. Rules

403 and 611, W.R.E.,[1] set out reasons upon which the exercise of the discretion may rest. 2 Louisell and Mueller, *Federal Evidence*, § 126, p. 29 (1978).

Assuming, arguendo, that it was improper to so limit the cross-examination, prejudice must be demonstrated to justify a reversal. Judge Barrett set this out with both clarity and brevity in *Carpenter v. United States*, 10th Cir., 463 F.2d 397, 402 (1972), when he said:

"The trial court has discretion in determining the limits of cross-examination and his discretion will not be disturbed unless clearly prejudicial. [Citing cases.] . . . "

Also see *State v. Lindley*, 23 N.C.App. 48, 208 S.E.2d 203, 204 (1974), on other issues 210 S.E.2d 207; *People v. Peter*, 55 Ill.2d 443, 303 N.E.2d 398, 404 (1973); *State v. Watkins*, 219 Kan. 81, 547 P.2d 810, 817 (1976). The factual situation here does not demonstrate prejudice. If testimony had been received in reference to these thirteen offered vouchers and had the court allowed inquiry to be made upon each of them, it would have certainly delayed these proceedings and would have tended to confuse the issues and mislead the jury.

Quarberg was not on trial for making false statements. As Judge Doyle stated in *United States v. Estell*, 10th Cir., 539 F.2d 697, 699–700:

". . . There is a point which constitutes a prosecution of the witness for the offense inquired about rather than a testing of his credibility and when that point is reached the court acts properly in closing down the questioning, for there is no valid interest to be served in shifting the emphasis from the accused persons on trial to the witness. [Citation omitted.] After all, he is not the subject of the prosecution."

Because it does not appear that it was prejudicial to limit the cross-examination and because the appellant has failed in carrying his burden of demonstrating the

1. The trial court made no reliance upon Rule 611(a), W.R.E., although it does have possible application, particularly insofar as parts (1) and (2) of said rule are concerned.

abuse of discretion in this particular case, this court cannot reverse on this ground.

## APPELLANT DEPRIVED OF A
## FAIR TRIAL

■ Finally, appellant contends that he was deprived of a fair trial. This issue involves a collection of several diverse questions which appellant deems to be error. The presentation of this matter is somewhat difficult to follow, but we shall attempt an analysis of the same as we understand it. It is suggested that Rule 9(a), W.R.Cr.P., was not followed because the indictment was not signed by a person who could appear in the action or the trial of the indictment. This is styled a "flagrant" violation of the rule, but, we find no claim that the appellant was prejudiced; nor do we find any authority cited that this is error, or that Nimmo was prejudiced as a matter of law. There is the further suggestion that, under our statutes, § 7–5–301, W.S.1977, there is an express provision for a grand jury to investigate matters "extending beyond county lines." Appellant then asserts that all the alleged acts which he has been charged with occurred in Laramie County and therefore, the claimed offense was beyond the jurisdiction of the statewide grand jury and the indictment is void. We are again offered no authority which would sustain this view, nor are we offered any argument that the appellant was prejudiced. These claims, both made without authority or any cogent argument to sustain the position of the appellant cannot and will not be considered. As this court has stated numerous times, we will not consider an issue that is not supported by either authority or cogent argument. *Otte v. State*, Wyo., 563 P.2d 1361 (1977), and numerous other cases enunciating the same rule.

■ Appellant also seeks to rest this claim on the failure of the State to comply with an order of discovery, that the trial court abused its discretion in failing to enforce its order and in failing to dismiss the charge as a result of the State's failure to comply with the court's order. The appellant complains that he was not supplied with or allowed to inspect the following exhibits until the morning of the trial: 1, 1–A, 2, 2–A, 3, 4, 5, 5–A, 6, 6–A, 7–A, 8, and 8–A. It would appear that exhibits 1, 1–A, 2, and 2–A were State vouchers and attached receipts from Little America and were filed and prepared by the appellant. They are public records and filed in the office of the State auditor, which were available to the State, to the appellant or to any member of the general public. The record reflects that the appellant knew prior to the trial that these documents were available and subject to a production order or subpoena. Any claim of prejudice, therefore, is frivolous. These remaining exhibits, of which complaint is made, 5, 5–A, 6, 6–A, 7–A, 8, and 8–A are the original meal ticket receipts and billing ledgers. Appellant certainly knew of their existence. This contention of surprise or that it hampered the preparation of his defense is nothing short of amazing. We find that by virtue of the court order dated January 31, 1978, which is a month and 20 days prior to the trial, the appellant was authorized to obtain a *subpoena duces tecum* for all such instruments in the office of the State auditor and make copies of all such records from Little America. It will be noticed that this order is dated 13 days after the order which appellant now claims was not enforced and upon which he bases his claim for dismissal. This court finds some incongruity in his claim of surprise by virtue of the fact that he had subpoenaed these same instruments. We do not find any claim that these subpoenas were not honored.

Appellant places his principle reliance upon *Campbell v. United States*, 373 U.S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963), as evidencing the rule requiring dismissal of this case because of the State's failure to produce these documents. This writer is unable to apply *Campbell* to the present case or to extract a rule from *Campbell* which would dictate dismissal of this matter. *Campbell* involved a matter arising under the "Jencks Act" which basically provides for production of statements of witnesses after they have testified and for purposes of impeachment. The appellant

makes no claim that he desired these for the purpose of impeachment but asserts that he was hampered in his preparation of the case. The Court made it clear in *Campbell* that it was only implementing the "Jencks Act" and providing for procedures thereunder.

█ Appellant further suggests that the court should reverse this case as a sanction against the prosecuting officials for which we again find no authority. Our Rule 49(a), W.R.Cr.P., provides that the court shall disregard any irregularity which does not affect substantial rights, and that for an error to be regarded as harmful ". . . there must be a reasonable possibility that in the absence of the error the verdict might have been more favorable to the defendant." *Reeder v. State*, Wyo., 515 P.2d 969, 973 (1973); *Hoskins v. State*, Wyo., 552 P.2d 342, 351 (1976), rehearing denied 553 P.2d 1390. Once again appellant does not contend this assignment of error, upon which he bases his request for reversal, was prejudicial to him.

Appellant's position that this failure to comply with the request for discovery in some manner offends due process is not supported by our holding in *Dodge v. State*, Wyo., 562 P.2d 303, 307 (1977). In *Dodge* we held that a defendant in a criminal case has no general constitutional right to discovery.

The judgment is affirmed.

ROSE, Justice, dissenting, with whom McCLINTOCK, Justice, joins.

I dissent.

The statute, now § 6–8–102, W.S.1977, under which Mr. Nimmo was charged and found guilty, is, in my judgment, unconstitutionally vague and is, therefore, in violation of Article 1, Section 6, of the Wyoming Constitution.

The question I will address is whether the portion of § 6–8–102, W.S.1977, that provides

"or whoever submits a false claim or voucher under penalty of perjury, shall be guilty of false swearing, . . ."

is unconstitutionally vague on its face.

The answer to the constitutional issue rests, almost entirely, on whether the statute can be properly construed to include the element of intent. It must be remembered, in this respect, that the court will not judicially incorporate into a statute language that was omitted by the legislature. *State v. Stern*, Wyo., 526 P.2d 344, 348 (1974). More specifically, this court will not read into criminal statutes the requirement of intent. *State v. Stern*, supra, at 348, fn. 6.

If intent is required by the statute, it must arise by virtue of the phrases "false claim" and "under penalty of perjury"— viewed singularly or in combination.

Viewed singularly, there is no doubt in my mind that the element of intent is absent. The plain and ordinary meaning of "false claim" would be a claim that is not true, or one that does not accord with reality. In law, the word "false" usually means designedly untrue, and implies an intention to deceive, but it has been held to mean simply "contrary to fact" or "erroneous" or "incorrect." See, Black's Law Dictionary, "False," at pp. 721–722. It might be said that because "false claim" is found in a penal statute it must mean "intentionally untrue." But to so conclude would be to read into the statute the element of intent—something this court has said it would not do. The fact is that, standing alone, the phrase "false claim" *can* be read as proscribing innocent conduct resulting from a mere mistake or error.

Furthermore, the phrase "under penalty of perjury"—when viewed by itself—has no legal significance in the quest to discover the element of intent. I would submit that the phrase, when taken in its plain and ordinary meaning, is merely a reference to the declaration that is to appear on the claim or voucher *by virtue of other statutory authority*. As noted in Perkins Crim.Law 2d Ed.—UTB 1969, at page 457:

"The most recent *substitute for an oath* is not 'administered' in any strict sense of

the term. It is merely *a declaration signed 'under the penalties of perjury.'* Such a declaration, however, has no legal significance unless made under authority of an appropriate statute. If a signer should voluntarily write 'under the penalties of perjury' over his signature, this would be just as meaningless as if a seller, just on his own initiative, should raise his right hand and 'swear' that he had title to the goods he was purporting to sell. And if this phrase appears in a printed form prepared by some commission, board or officer it is equally without legal effect unless its appearance is under statutory authority." [Emphasis supplied]

Examples of such "other" statutory authority abound in Wyoming statutes. For examples, see § 18–3–510(a), W.S.1977, requiring an affidavit for a claim against a county; § 27–12–201, W.S.1977, requiring an employer to submit his payroll "certified and affirmed . . . under penalty of perjury"; and § 37–8–410, W.S.1977, requiring motor carriers to certify total ton miles traveled "under penalty of perjury . . . on forms furnished [by the state tax commission]." The provision perhaps most applicable to the present case is § 9–2–307, W.S.1977, prohibiting the auditors to draw warrants, except on the basis of itemized accounts "certified to under penalty of false oath." Article 16, Section 7, Wyoming Constitution.

The phrase "under penalty of perjury" seems to have been used to add to the false-swearing statute the requirement that the "false claim" be made under circumstances where the claim must be submitted along with a declaration of veracity. Only this makes sense, since the element of an oath goes to the very foundations of the crime. When we say, however, that the claim must have been made under oath ("under penalty of perjury"), we have said nothing about whether the statute requires proof that one has made a false claim, under oath, *with knowledge that the claim was false.* This is so because a person can make a false claim or statement, under oath, without *knowing* that the claim or

statement *is* false. Under these circumstances, the person would not be guilty of false swearing—under the classical definition—because he was not intentionally untrue.

In other words, while the phrase "under penalty of perjury" provides the element of an oath, it does not also provide the element of guilty knowledge. Standing alone, the phrase merely adds an element that does not necessarily include intent.

Can we combine "false claim" and "under penalty of perjury" to supply the element of intent? I say no, for the same reason that the requirement of an oath does not, in itself, supply the element of intent. An oath refers only to a type of statement, i. e., it is a statement claimed to be true. A statement claimed to be true, but which is in fact untrue, does not necessarily constitute false swearing—or the swearing to a statement without the sincere belief in its truthfulness. By simply reading the pertinent portion of § 6–8–102, men of common intelligence would see only the elements of falsity, an oath, and submission of a claim under said oath. He would necessarily have to guess that his submission must also, to be criminal, be with knowledge of the falsity. It is this very possibility that innocent acts may be covered by a penal statute, that led this court to its conclusion in *Stern,* supra, albeit under a different statutory setting and circumstance.

I am unable to overcome the fact that, if such had been intended, the legislature could have easily added words like "knowingly" or "wilfully" to the pertinent portion of § 6–8–102. Such words appear in every other perjury-type statute in the Wyoming Statutes. See listing of these provisions prior to § 6–8–101, W.S.1977. We would have to conclude that such words would have been mere surplusage, in order to conclude that the intent element manifested by such language is present in §. 6–8–102. How can we call those words surplusage, when the legislature, in every other statute, has itself deemed it necessary to include them? I, for one, am unable to do so.

Finally, I would note a problem similar to that raised in *Stern*, supra, to-wit: If we were to construe the statute as requiring intent, what intent should we read into it? Must there be a specific intent to defraud the government? I would note that the federal circuit courts have considered this question, with varying results, under the federal false-claim statute (31 U.S.C.S. § 231)—where the phrase "knowing such claim to be false" is used. See, Gen., Annota., "False Claims Act—Specific Intent," 26 A.L.R.Fed. 307 (1976).

I would, therefore, have held the statute under which Mr. Nimmo was charged and convicted, to be unconstitutional on its face and would have remanded with orders to dismiss the charges.