In re JENKINS LANDSCAPING & EXCAVATING, INC., Debtor.

APAC–VIRGINIA, INC., Plaintiff,

v.

JENKINS LANDSCAPING & EXCAVATING, INC.; General Excavation, Inc.; Russell A. Jenkins; and Elta Ray Jenkins, Defendants.

Bankruptcy Nos. 5–84–00263, 5850013.
Civ. A. No. 87–0036–H.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

Nov. 7, 1988.

Michael C. Montavon, Fairfax, Va., Robert B. Baumgartner, Fairfax, Va., for plaintiff.

Norborne P. Beville, Jr., Manassas, Va., Holmes C. Harrison, Harrisonburg, Va., for defendants.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This matter comes before the court on appeal of a decision of the bankruptcy court in an adversary proceeding brought by APAC–Virginia, Inc. ("APAC"), a paving company, to recover assets which were allegedly conveyed fraudulently by its judgment debtor, Jenkins Landscaping & Excavating, Inc. ("JLE"), to General Excavation, Inc. ("General"), and to Russell A. Jenkins and Elta R. Jenkins ("the Jenkins").

The facts in this action are as follows. APAC filed a motion for judgment in the Circuit Court of Prince William County against JLE on September 30, 1981. On February 15, 1983, JLE ceased doing business. On March 1, 1983, the Jenkins began doing business under the trade name of General Excavation, Inc., which was later incorporated on March 28, 1983. On April 20, 1983, JLE declared a dividend of approximately $18,000 to the Jenkins. On the same date, JLE transferred substantially all of its assets to General, including equipment and accounts receivable worth an estimated $78,300. General also assumed JLE's liability for a $57,500 debt owed to the Jenkins as well as a $16,000 debt owed to Page Valley National Bank. The only obligation of JLE which was not assumed by General was the debt to APAC. General has subsequently satisfied the obligation to Page Valley National Bank and has curtailed the obligation to the Jenkins by $21,000, leaving a debt owed to the Jenkins of roughly $37,000. At the time of the transfer of assets, JLE and General had the same employees, the same address, the same telephone number, some of the same customers, and the same bank. Mr. and Mrs. Jenkins served as the sole shareholders, officers, and directors of both JLE and of General.

On May 18, 1983, a judgment of $46,000, plus interest, was finally entered against JLE in APAC's state collection action. This judgment was obtained after JLE had twice requested that the trial in that proceeding be postponed. JLE's petition for a Chapter 7 bankruptcy was filed over a year later, on August 2, 1984. At the time of the filing, APAC was the only creditor of JLE. APAC's claim was listed in the amount of $57,887.94, while JLE's assets totalled only $4,059.70.

APAC filed this adversary proceeding on February 2, 1985, in order to set aside the conveyances from JLE to General and the Jenkins. APAC's original complaint contained four counts. Count I asked that the liabilities of JLE be impressed upon General and upon the Jenkins by "piercing the corporate veil" of General. Count II alleged a fraudulent conveyance pursuant to Va. Code § 55–80. Count III alleged a fraudulent conveyance pursuant to 11 U.S.C. § 548 but was dismissed by the bankruptcy court before trial since the transfers in question occurred more than one year before the filing of the bankrupt-

cy petition. Count IV alleged a fraudulent conveyance pursuant to Va. Code § 55–81. In addition, APAC asked the bankruptcy court to impose punitive damages upon the Jenkins and General.

During the trial of this proceeding, on September 4, 1986, the defendants stipulated that the conveyances from JLE to the Jenkins and to General were fraudulent *per se*, and thus, pursuant to Va. Code § 55–80, should be avoided with the assets returned to the bankruptcy estate. The defendants also asserted that the Jenkins, who were creditors of JLE at the time of the fraudulent transfers, were now entitled to share ratably in the distribution of the bankruptcy estate. The defendants further claimed that either General or the Jenkins should receive a credit from the bankruptcy estate for satisfying the obligation to Page Valley National Bank.

On December 20, 1986, the bankruptcy court delivered its written opinion. In examining Count I, the bankruptcy court found that APAC could not reach the assets of General or the individual assets of the Jenkins under a "piercing of the corporate veil" theory. The court did find merit in Counts II and IV, holding that the transfer of assets should be voided pursuant to Va. Code §§ 55–80 and 55–81, and that the assets be returned to the bankruptcy estate. The court declined to allow the Jenkins to share *pro rata* in the distribution of the bankruptcy estate or to assess punitive damages. Both parties then appealed the findings of the bankruptcy court. These issues on appeal, having been fully briefed and argued, are now ripe for review, and are resolved in this opinion *infra*.

■ In Count I of its complaint, APAC claimed that General and Mr. and Mrs. Jenkins should be liable for the full amount of the judgment owed by JLE to APAC. APAC has first alleged that General is merely a continuation of JLE and must therefore assume its obligations. APAC has also alleged that Mr. and Mrs. Jenkins should be held personally liable for its judgment against JLE by "piercing the corporate veil" since that corporation was effectively the alter-ego of the Jenkins. The

bankruptcy court declined to impose liability either against General or against Mr. and Mrs. Jenkins. On appeal, this court finds that the bankruptcy court erred in its failure to impose partial liability upon General for the debts of JLE; however, this court concurs in the bankruptcy court's refusal to "pierce the corporate veil" and thereby impose personal liability on Mr. and Mrs. Jenkins for the corporate debt of JLE. Certainly, the law in Virginia is well settled that a successor corporation is liable for the transferor's debts if the successor corporation is a mere continuation, or alter-ego, of the selling corporation. *See e.g.* 4B A. Kowalsky, R. Walter, and M. Divine, *Michie's Jurisprudence,* Corporations § 256 (1986). The Fourth Circuit followed this common law proposition in *National Car Loading Corp. v. Astro Van Lines,* 593 F.2d 559 (4th Cir.1979). In *National Car Loading,* the Fourth Circuit, applying Virginia law, found that a transferee corporation was responsible for the debts of the transferor because the transferee was merely the continuation of its transferor and because the transaction in question, which left virtually no assets with which to pay the transferor's debts, was not made in good faith but rather to evade the creditors of the transferor. *Id.* at 564.

The appellants have attempted to negate the significance of *National Car Loading* by reference to the Virginia Supreme Court decision of *Mills v. Miller Harness Co., Inc.,* 229 Va. 155, 326 S.E.2d 665 (1985). The court finds these efforts to be misguided. The court in both *Mills* and the more recent case of *Cheatle v. Rudd's Swimming Pool Supply,* 234 Va. 207, 360 S.E.2d 828 (1987), holds that Virginia's fraudulent conveyance statute, Va. Code § 55–80, does not authorize an *in personam* judgment against favored creditors who have received fraudulently-conveyed assets; instead, the statute requires that the conveyance be set aside and ratably distributed to all legitimate creditors. *Id.* at 211, 360 S.E.2d at 830. In contrast, the Fourth Circuit's holding in *National Car Loading* addresses a different situation, one that arises when an entire corporation is effectively transferred into another, leaving be-

hind only a hollow corporation incapable of satisfying the judgments of its creditors, while the "new" corporation continues business as usual.

The Virginia Supreme Court's interpretation of the potential relief provided by the Commonwealth's fraudulent conveyance statute in *Mills* and *Cheatle* should not, as the appellants have argued, be construed to abolish the distinct and compatible common law doctrine relied upon in *National Car Loading.* The statute and the common law doctrine provide alternative, not mutually exclusive, forms of relief. This conclusion is supported by the Virginia Supreme Court in the *Cheatle* case itself. In *Cheatle,* the court first examined the fraudulent conveyance statute and concluded that its language provided no basis for the imposition of personal liability. *Id.* 234 Va. at 212, 360 S.E.2d at 831. The court then turned to the separate issue of personal liability pursuant to the common law's alter-ego theory, as explained in *Lewis Trucking Corp. v. Commonwealth,* 207 Va. 23, 31, 147 S.E.2d 747, 753 (1966). Although the court found that "piercing the corporate veil" and thereby imposing personal liability was inappropriate in that case, the court noted no inherent conflict between imposing personal liability pursuant to the alter-ego theory and refusing to impose personal liability pursuant to Va. Code § 55–80. *Id.* Furthermore, the *Cheatle* court actually cited *National Car Loading* and, while finding it factually inapposite, made no mention of a conflict between the Fourth Circuit's holding and Virginia's fraudulent conveyance statute. *Id.* This court therefore finds that the "alter ego" or "mere continuation" doctrine relied upon in *National Car Loading* is neither undermined nor displaced by the Virginia Supreme Court's findings in *Mills* and *Cheatle.* The fraudulent conveyance statute and the common-law doctrine are complementary rather than contradictory. The court now examines the bankruptcy court's decision not to allow APAC, a judgment creditor, to reach the assets of General, the alleged alter-ego of the bankrupt, JLE.

In its opinion, the bankruptcy court found as follows:

> The Plaintiff's alter-ego or "piercing the corporate veil" theories, were it not for the filing of the Debtor's bankruptcy petition, might very well warrant treating Jenkins Landscaping and General Excavation as one and the same entity and allowing the Plaintiff to reach the newly-generated assets of General. Both companies were controlled by Mr. and Mrs. Jenkins, used the same offices, virtually all of the same machinery and equipment, and carried on more or less the same type of business for the same major customers. But even if there had never been created a second corporation, the Plaintiff still could not reach assets generated after the Debtor filed for a liquidating bankruptcy but would in any event have been relegated to the Debtor's assets at the time of filing. The court accordingly is of the opinion that the plaintiff should not be able to reach the debtor's assets except to the extent that they are brought back into the Debtor corporation as fraudulent conveyances.

*In Re: Jenkins Landscaping & Excavating, Inc.,* No. 5–84–00263, slip. op. at 3 (Bankr.W.D.Va. December 29, 1986).

The court finds this analysis to be erroneous in part. The court first holds that the evidence presented to the bankruptcy court regarding the control and operation of JLE and of General leads to the inescapable conclusion that General was in fact the alter-ego of JLE. Although the bankruptcy court never explicitly found General to be JLE's alter-ego, the language cited *supra* demonstrates the bankruptcy court's concurrence with this court's finding.

Because General was the alter-ego of JLE, the bankruptcy court erred in its refusal to consider the pre-petition assets of General as property of the estate. Property of the estate includes all legal or equitable interests of the debtor as of the commencement of the case, which occurs at the time of filing of the petition for bankruptcy. *See* 11 U.S.C. § 541(a). Since Gen-

eral was merely the alter-ego of JLE, the property of the debtor, pursuant to 11 U.S.C. § 541(a)(1), rightfully included the legal and equitable interests of its alter-ego as well, as those interests were acquired by General from the time of the transfer of the assets of JLE to General up to the date of the filing of the petition by JLE.

The court notes that it is well established that the bankruptcy court may, in the exercise of its equitable jurisdiction, disregard corporate entities where a corporation is no more than the alter-ego of the bankrupt so as to treat the bankrupt's trustee as titleholder of the alter ego's property. 4A *Collier on Bankruptcy* § 70–15 at 138–139 n. 14 (14th Ed.Rev.1978). *See In re F & C Services, Inc.*, 44 B.R. 863, 870 (Bankr.S.D. Fla.1984) (debtor's assets when held by a transferee corporation as its alter-ego were property that bankruptcy trustee could use, sell, or lease, and thus trustee entitled to turn over of all property of transferee as property of debtor's estate); *see also, In re Crabtree*, 39 B.R. 718, 723 (Bankr.E.D. Tenn.1984) (bankruptcy court has the power to disregard separate corporate entities to reach assets to satisfy debts of the bankrupt corporation from assets of its non-debtor alter-ego); *see also In re Continental Vending Machine*, 517 F.2d 997, 1000 (2d Cir.1975); *cert. denied* 424 U.S. 913, 96 S.Ct. 1111, 47 L.Ed.2d 317 (1976) (bankruptcy court has equitable power to consolidate, disregarding separate corporate entities, to reach assets to satisfy debts of a related corporation).

■ Because all pre-petition assets of General, the alter-ego of JLE, constitute the property of the estate of the bankrupt, General must turn over all its property and assets, or their value, as of the date of the filing of the bankruptcy petition, to the bankruptcy trustee pursuant to 11 U.S.C. § 542.

This court agrees with the bankruptcy court's finding that any assets generated by either JLE or General after the filing of the bankruptcy petition are not property of the estate and thus cannot be collected and sold by the bankruptcy trustee.[1]

■ The court also concurs with the bankruptcy court's finding that the transfer of assets to General as well as the declaration of a dividend to Mr. and Mrs. Jenkins, both of which occurred on April 20, 1983, were made with the specific intent to defraud the creditors of JLE and are consequently void pursuant to Va. Code § 55–80. The bankruptcy court was correct in ruling that these fraudulent conveyances should be set aside and that the transferees consequently turn over the assets or their value to the bankruptcy trustee, as property of the estate, for ratable distribution to the bankrupt's creditors. *See* 11 U.S.C. §§ 541 and 542; *Mills v. Miller Harness Co., Inc.*, 229 Va. 155, 326 S.E.2d 665 (1985); *Cheatle v. Rudd's Swimming Pool Supply*, 234 Va. 207, 360 S.E.2d 828 (1987). The court now considers the ability of Mr. and Mrs. Jenkins, as creditors of JLE, to share in the distribution of the bankrupt's assets.

■ The Jenkins' claim against the bankruptcy estate results from a $57,000 note which JLE originally executed in favor of the Jenkins, and which was subsequently assumed by General as part of the fraudulent conveyances made on April 20, 1983. The bankruptcy court held that upon the avoidance of the fraudulent conveyances and the return of the assets and liabilities, including the Jenkins' note, to the debtor's estate, the Jenkins were not entitled to share ratably in the bankruptcy estate because of their actual intent to defraud the appellee and because of their failure to file a proof of claim in the bankruptcy proceeding. The court finds these holdings to be erroneous.

As noted *supra*, this court agrees with the bankruptcy court's determination that the fraudulent transfers at issue were made with the actual intent to defraud APAC; however, the court disagrees with the proposition that this intent bars the

---

**1.** Such post-petition assets would not qualify as property of the estate pursuant to 11 U.S.C. § 541(a)(6) as they are properly considered as "earnings from services performed by an individual after the commencement of the case," not as "profits of or from" the property of the estate.

Jenkins from participating in the ratable distribution of the bankrupt's estate. In *Mills*, 229 Va. 155, 326 S.E.2d at 665, the Virginia Supreme Court held that when a liquidating corporation prefers a creditor who is himself in complete control of that corporation's affairs, the law will presume an actual intent to defraud other creditors pursuant to Va. Code § 55–80, which, unlike Va. Code § 55–81, requires a showing of actual fraudulent intent. *See e.g. Battle v. Rock*, 144 Va. 1, 131 S.E. 344 (1926). The *Mills* court continued by holding that the appropriate remedy for a conveyance deemed fraudulent pursuant to Va. Code § 55–80 is a return of the fraudulently conveyed assets for a ratable distribution to the transferor corporation's creditors. The court held that these creditors specifically included the fraudulent transferee, who had himself controlled the affairs of the transferor corporation and then fraudulently conveyed the assets to himself.

It is more than passing strange that the perpetrators of an admitted fraud on the creditors of the perpetrators should nonetheless be permitted to share in the distribution of the fraudulently conveyed assets once those assets are returned to the trustee. Such action is to the obvious and measurable detriment to those creditors whose claims the perpetrators sought to frustrate or make uncollectible by the fraudulent transfers, but, under *Mills*, the law of the Commonwealth of Virginia mandates that peculiar result.

The court finds the *Mills* decision to be controlling on the facts of this case. Mr. and Mrs. Jenkins, like Mr. Mills, exercised complete control over the affairs of JLE and consequently transferred corporate assets to themselves in violation of Va. Code § 55–80. The *Mills* court clearly held that the appropriate remedy in such a situation is to return the fraudulently conveyed assets for a ratable distribution to all legitimate creditors, which may include the recipient of the fraudulent conveyance. The Jenkins, as legitimate creditors of JLE, are therefore entitled to share in the distribution of the bankrupt's estate, after they have returned the fraudulently conveyed assets, or their value to the estate.

The bankruptcy court declined to follow *Mills* on the grounds that its holding did not apply to situations of actual fraud. The court finds this ruling to be erroneous. *Mills* involved setting aside a fraudulent conveyance pursuant to Va. Code § 55–80, which, as noted *supra*, always requires a showing of actual fraud. *See e.g. Battle*, 144 Va. at 1, 131 S.E. at 344. While the court held that, under specified circumstances, actual fraud may be *presumed*, the court's holding in no way indicates that when actual fraud is demonstrated, and not merely presumed by law, the remedy prescribed by the court is inappropriate. In this situation, the distinction between actual fraud and fraud *per se* goes only to the degree of proof necessary to void a fraudulent conveyance pursuant to Va. Code § 55–80. The distinction does not influence the *Mills* court's prescription for an appropriate remedy once a conveyance is deemed fraudulent pursuant to Va. Code § 55–80.

■ The bankruptcy court also refused to allow the Jenkins to share in the distribution of the estate because they had not filed a timely proof of claim. Rule 3002(c)(3) of the Bankruptcy Rules provides that in a Chapter 7 liquidation a proof of claim must normally be filed within ninety days after the first date set for the meeting of creditors, except when an unsecured claim arises in favor of a person or becomes allowable as a result of a judgment, if that judgment is for the recovery of money or property from that person or if it denies or avoids the person's interest in property. Under such circumstances, Rule 3002(c)(3) allows the proof of claim to be filed within thirty days after the judgment becomes final. The Jenkins had no claim against the bankrupt's estate until the bankruptcy court ordered General to return its fraudulently conveyed property, including the Jenkins' note, to the estate of JLE. Thus, the bankruptcy court erred in refusing to recognize that because its own judgment generated the Jenkins' claim against the bankrupt's estate, the absence of the Jenkins' proof of claim at the time of the judgment would not of itself bar the

Jenkins' participation in the distribution of the estate.

The court thus finds that the bankruptcy court's refusal to allow the Jenkins to file their proof of claim within thirty days of its final judgment was error pursuant to Rule 3002(c)(3). Because a judgment which has been appealed does not become final for the purpose of starting the thirty-day period provided for by Rule 3002(c)(3) until the appeal is "disposed of," *see In re Tapp,* 61 F.Supp. 594 (W.D.Ky.1945) (cited in Bankruptcy Rule 3002 Advisory Committee Note), the Jenkins must now file a new proof of claim within thirty days of the entry of this court's judgment. This court notes that the proof of claim filed by the Jenkins on January 13, 1987, has been excluded from the record on appeal, pursuant to this court's order of April 13, 1987, because this proof was not part of the record during the proceedings before the bankruptcy court.

■ This court concurs in the bankruptcy court's refusal to give any credit to General for its repayment of the $16,000 obligation to Page Valley National Bank ("the Bank"). The court has already held that General was merely the alter-ego of JLE and that the transfer of assets and liabilities were fraudulent conveyances pursuant to Va. Code § 55–80. The appellants argue that if General must now return the value of the fraudulent conveyances to the bankruptcy estate, thereby losing the consideration accepted in return for the assumption of the Bank's obligation, equity demands that General or the Jenkins receive credit from the bankruptcy estate for the repayment of JLE's obligation, which, if not already satisfied, would comprise an additional liability for the estate. The court is unpersuaded by this argument.

As the bankruptcy court noted, General is a corporation which was fraudulently conceived and constructed pursuant to JLE's scheme to avoid repayment of its debt to APAC. General was merely the continuation of JLE. Therefore, any apparent consideration received by General for its assumption of JLE's obligations was only illusory, as the transaction occurred within the confines of what was effectively a single entity. General repaid the obligation to the Bank in its capacity as the alter-ego of JLE. Thus, General did not so much repay the Bank for the benefit of JLE as it repaid the Bank for its own benefit. General cannot now demand equitable reimbursement from the bankrupt's estate for paying what was essentially its own debt.

Finally, the appellee has argued that the bankruptcy court erred by refusing to assess any punitive damages against the appellants. This court notes that the decision to assess punitive damages lies within the court's discretion upon the showing of actual malice. *See In re Criswell,* 52 B.R. 184, 205 (Bankr.E.D.Va.1985). Although the bankruptcy court gave no reasons for its decision to deny punitive damages, this court does not find the refusal to assess punitive damages clearly erroneous and thus holds that the absence of punitive damages is not reversible error.

As a result of the court's foregoing findings, Mr. and Mrs. Jenkins and General shall return all property, or its value, which JLE fraudulently conveyed to them on April 20, 1983. Such assets now constitute property of the bankruptcy estate of JLE and shall be turned over to the bankruptcy trustee. Furthermore, the property of the bankruptcy estate shall also include all assets, or their value, of General as of the date of the filing of the bankruptcy petition. Finally, the Jenkins, as creditors, may share in the distribution of the bankruptcy estate; however, they may not claim any credit and subsequent right of set-off arising out of any payments made on the note payable to Page Valley National Bank.

An appropriate Order shall this day issue.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is this day

### ADJUDGED AND ORDERED

that:

1. The judgment of the United States Bankruptcy Court for the Western District of Virginia of December 29, 1986, shall be, and it hereby is, affirmed in part and reversed in part.

2. This matter shall be, and it hereby is, remanded to the United States Bankruptcy Court for the Western District of Virginia for further proceedings not inconsistent with this court's Memorandum Opinion.

3. This case shall be, and it hereby is, dismissed and stricken from the docket of this court.