State of Iowa, appellee, v. Floren Di Paglia, appellant.

No. 48577

(Reported in 71 N.W.2d 601)

80.

JULY 27, 1955.

REHEARING DENIED OCTOBER 21, 1955.

R. E. Hanke, of Des Moines, for appellant.

Dayton Countryman, Attorney General, Raphael R. R. Dvorak and George G. West, Assistant Attorneys General, and Leo J. Tapscott, County Attorney, for appellee.

OLIVER, C. J.—Defendant Di Paglia was indicted for Bribery in Athletic Contest, it being charged he offered money to Benjamin James Bumbry, Jr., with intent to influence him to fix the score in a basketball game.

Defendant knew Drake University at Des Moines had a basketball game scheduled with Iowa State College for December 22, 1953, and that Bumbry, with whom he was not personally acquainted, was a player on the Drake team. About December 15, 1953, defendant, under the assumed name of Charles Davis, after several days of intensive efforts to contact Bumbry, succeeded in doing so by telephoning him at the place in Des Moines where Bumbry roomed. Bumbry testified defendant, in that conversation, said he would like to have Bumbry play ball for him. Bumbry declined and defendant then said he wanted to talk to Bumbry confidentially. Bumbry walked to a near-by grocery store and there was taken into an automobile by defend-

ant, who identified himself as Charles Davis, and driven slowly around the block with a stop of ten or fifteen minutes.

Defendant "stated he didn't know how to approach me on the subject." He then asked, "would I shave points against Iowa State. He said Iowa State was supposed to win by eight and couldn't they win by ten", or more, "* * * could you cause Drake to lose by ten points?" Bumbry said he did not have anything to do with that. Defendant said there was nothing to be afraid of, the big cities were still doing it. He cautioned Bumbry not to tell anyone. He then asked Bumbry if he thought Willie Cerf, another member of the Drake basketball team, "would do anything like that?" He told Bumbry there was some money to be made and asked Bumbry if he "didn't like money." He first mentioned $300 and then "said he knew he could get a thousand dollars, we could split it three ways." He said, "Look what I could have at the end of the season, two or three G's. * * * He said if I did take it he would like for me to wait until the end of the season before I spent it."

Bumbry refused to consider defendant's proposition and reported the matter to his coach and others. The following morning defendant telephoned Bumbry and asked him if he had changed his mind. Bumbry said, "No, sir."

There was evidence also defendant inquired of a student, Calvin Hicks, whether Bumbry and Cerf had dependents and could use some money, if $500 per game would satisfy them, and did Hicks think they would go along with something like that. Hicks answered in the negative. Defendant "said he didn't see where there would be anything wrong, the outcome of the game so far as winning or losing wouldn't be jeopardized in any way, just be a matter of shaving a few points."

As a witness defendant admitted he sought out Bumbry and took the latter into defendant's automobile substantially as told by witnesses for the State and that at times he had used the name of Charles Davis and had used it in locating Bumbry. His story is he told Bumbry he was thinking of making a $200 or $300 bet on the Drake-Iowa State game and merely asked Bumbry if he thought Drake would win, or would win by eight or ten points and that Bumbry was noncommittal on the subject.

The jury found defendant guilty and the court adjudged that he be committed to the Men's Reformatory at Anamosa for an indeterminate period not to exceed ten years. Defendant has appealed.

I. He assails the validity and sufficiency of the indictment and the validity of the statute, chapter 254, Laws of the Fifty-fifth General Assembly, now section 739.12, Code of Iowa, 1954, which provides: "Bribery in athletic contests. Whoever gives, promises, offers or conspires to give, promise or offer, to anyone who participates or expects to participate in any professional or amateur game, contest, match, race or sport; * * * any bribe, money, goods, present, reward or any valuable thing whatsoever, or any promise, contract or agreement whatsoever, with intent to influence him or them to lose or cause to be lost any game, contest, match, race or sport, or to limit his or their or any person's or any team's margin of victory in any game, contest, match, race or sport, or to fix or throw any game, contest, match, race or sport, shall be sentenced to pay a fine not exceeding ten thousand dollars, or undergo imprisonment not exceeding ten years, or both."

The indictment states the Polk County Grand Jury "accuse Floren Di Paglia of Bribery in Athletic Contest as defined in Chapter 254 of the Laws of the Fifty-fifth General Assembly of the State of Iowa, and charge that Floren Di Paglia did offer to give money to Benjamin James Bumbry, Jr. with intent to influence him to fix the score of an amateur basketball game in which the said Benjamin James Bumbry, Jr. expected to participate, to-wit: Drake University versus Iowa State College."

It charges the offense by using the name given it by the statute (Bribery in Athletic Contests), and referring to the section of the statute creating such offense (chapter 254, 55th G. A.), and by specifying and describing the act charged as constituting the offense. This is sufficient to comply with section 773.3, Code of Iowa, 1954, which refers to the contents of indictments. State v. Leahy, 243 Iowa 959, 965, 54 N.W.2d 447; Meeks v. Lainson, 246 Iowa 1237, 71 N.W.2d 446; State v. Keturokis, 224 Iowa 491, 276 N.W. 600. See also other sections of chapter 773, Code of 1954.

II. Appellant asserts the minutes of the evidence

upon which the indictment was found do not set out any evidence "which would warrant the charge", and contends his demurrer to the indictment should have been sustained for that reason. This is contrary to the facts. The minutes disclose substantial evidence which supports the charge. However, the order overruling the demurrer to the indictment would not have been erroneous had the minutes not contained such evidence.

State v. Finnegan, 244 Iowa 166, 172, 55 N.W.2d 223, 226, points out: "Such minutes are not part of the indictment. State v. Briggs, supra, 68 Iowa 416, 420, 27 N.W. 358. Grounds of demurrer must appear on the face of the indictment. Code section 777.2; State v. Lamb, 239 Iowa 176, 180, 30 N.W.2d 734, 736; State v. Boucher, 237 Iowa 772, 23 N.W.2d 851."

III. Appellant makes a general assault upon the validity of the statute (now Code section 739.12). He refers to common-law definitions of bribery and to statutory crimes involving bribery and corruption which he asserts have in effect codified the common law and have also extended it. He questions the power of the legislature "to extend bribery to include an entirely new and different class of individuals, acts or omissions." We are unable to agree with the foregoing reasoning. Generally speaking, there are no common-law offenses in Iowa and all crimes are statutory. Estes v. Carter, 10 Iowa 400; State v. Banoch, 193 Iowa 851, 186 N.W. 436.

In creating an offense the legislature may give it a name known to the common law, without further defining it, or the statute may expressly refer to the common law for definition. In such instances the common-law definition will be applied. On the other hand, the legislature may define the offense by a particular description of the act or acts constituting it. State v. Flory, 203 Iowa 918, 924, 210 N.W. 961, 964; State v. Loser, 132 Iowa 419, 424, 104 N.W. 337, 338, 339. It is the rule that "if the statute clearly defines the thing or act which is forbidden, a resort to common-law definitions to add to or detract from the effect of the language of the statute is neither necessary nor permissible." State v. Clough, 181 Iowa 783, 785, 165 N.W. 59, 60. We have frequently said the legislature may be its own lexicographer and write its own definitions of words and terms. Sandberg Co. v. Iowa State Board of Assessment

and Review, 225 Iowa 103, 107, 278 N.W. 643, 645; Eysink v. Board of Supervisors, 229 Iowa 1240, 1245, 296 N.W. 376, 378.

In this case the legislature created an offense which it named "Bribery in Athletic Contests." Clearly it was empowered to do that. It then proceeded to define that offense in detail. Appellant contends the statute is indefinite and uncertain and for that reason violative of the due process clauses of Article I, section 9 of the Constitution of Iowa, and of the Fifth and Fourteenth Amendments to the Constitution of the United States. This contention is not meritorious. The part of the statute involved in this case is not complicated. The only accusation in the indictment was that defendant offered to give money to Bumbry with intent to influence him to fix the score of the game. The court instructed the jury: "* * * the law applicable to the case now on trial is, that whoever offers to give money to anyone who expects to participate in any amateur game, with the intent to influence the expectant participant to fix the score of the amateur game, shall be punished as by said statute provided."

One challenging a statute has the burden to overcome the presumption it is constitutional and to negative every reasonable basis upon which it may be sustained. Knorr v. Beardsley, 240 Iowa 828, 38 N.W.2d 236. Appellant has not met this burden. There is no showing the provisions of this statute which are involved in this case are indefinite or uncertain. On the contrary, such provisions are explicit and the language clear. This statute is much more detailed than was the statute in Glickfield v. State, 203 Md. 400, 101 A.2d 229, in which a contention it was fatally vague and indefinite was overruled and a conviction of attempting to bribe a football player was affirmed.

IV. The maximum penalty provided for Bribery in Athletic Contests is a fine of $10,000 and imprisonment for ten years. Appellant contends this is an excessive fine and a cruel and unusual punishment prohibited by Article I, section 17, of the Constitution of Iowa. It appears the legislature gave careful consideration to the penalties provided by the statute. The "Explanation" attached to the bill refers to "the all too successful efforts of professional gamblers to bribe participants in athletic

contests as a means of inducing them to 'throw' such contests" and recommends that the penalties "be severe enough to deter bribery by the 'tinhorn sport' who has infested the sports scene." The legislature determined what penalties would be sufficient to suit that purpose. They do not appear unreasonable. We are satisfied they do not violate section 17 of Article I, of the Constitution of Iowa. See State v. Burris, 194 Iowa 628, 638, 639, 190 N.W. 38, 42, 43; 24 C. J. S., Criminal Law, section 1978; 15 Am. Jur., Criminal Law, section 535.

■ ■ V. Error is assigned to the order overruling appellant's motions for directed verdict, in arrest of judgment, and for new trial. It is contended the evidence of an *"offer to bribe"* was insufficient to support that charge. The charge against appellant was not in that language. It was charged he offered to give money to Bumbry with intent to influence him to fix the score of the game. The testimony of Bumbry may be fairly interpreted as showing such offer and intent. His testimony is supported by the testimony of other witnesses and by circumstances shown in the record. The rule is well settled in determining a defendant's motion for directed verdict the record will be viewed in the light most favorable to the State. State v. Rutledge, 243 Iowa 179, 183, 184, 47 N.W.2d 251.

We conclude the evidence was sufficient to require submission of the case to the jury.

. ■ VI. Errors are assigned to instructions defining several words. Only the propositions raised in the trial court will be considered. Complaint is made of the definition of the word "feloniously." However, the definition given does not differ substantially from the definition appellant requested the court to give. Hence, no error may be predicated upon it.

The complaint in the trial court about the definition of "bribery" was that it was made applicable to prospective participants in an amateur game and was contrary to the meaning of the word prior to the adoption of the statute. The defining of the word "bribery" may have been unnecessary, because the charge was merely that appellant offered to give money to Bumbry with intent to influence him to fix the score. However, it was not error to limit the definition of this word, "as applied to this case" and in the light of the statute.

As to the word "offer" appellant complains because the court added to a dictionary definition "and hence no actual tender or production of any money need be made." The quoted statement is correct and made the definition apply to the factual situation at hand. No error appears here.

VII. The court adjudged that defendant be committed to the Men's Reformatory at Anamosa for an indeterminate period not to exceed ten years. Appellant contends this was erroneous for the reason that the crime of which he was convicted was not a felony and hence not punishable by imprisonment in the penitentiary or reformatory.

Code section 739.12 is almost the same as a Pennsylvania statute (Purdon's Pennsylvania Statutes Annotated, Title 18, section 4614) from which it was taken. However, the Pennsylvania statute provides one committing Bribery in Athletic Contests is guilty of a misdemeanor and "shall be sentenced to pay a fine not exceeding ten thousand dollars ($10,000.00) or undergo imprisonment not exceeding ten (10) years, or both." The Iowa statute does not state the offense is a felony or a misdemeanor nor does it specify the place of imprisonment. It provides merely that one committing the offense "shall be sentenced to pay a fine not exceeding ten thousand dollars, or undergo imprisonment not exceeding ten years, or both."

Code section 687.2, Code of Iowa, 1954, provides: "A felony is a public offense which may be punished with death, or which is, or in the discretion of the court may be, punished by imprisonment in the penitentiary or men's reformatory."

Although the rule in some states is different, most of them have similar statutes. 22 C. J. S., Criminal Law, section 6; 14 Am. Jur., Criminal Law, section 13. Code section 687.4 provides every other public offense is a misdemeanor.

There are various distinctions between the two grades of offenses. Two important ones are that one convicted of a felony (only) loses the privileges of citizenship and if sentenced to the penitentiary is, with certain exceptions, subject to the indeterminate sentence statute. It is not essential that any criminal statute shall declare in terms that its violation

shall constitute a misdemeanor or a felony. A public offense will be a felony or a misdemeanor according to the punishment which may be imposed therefor. Bopp v. Clark, 165 Iowa 697, 701, 702, 147 N.W. 172, 52 L. R. A., N. S., 493, Ann. Cas. 1916E 417.

In 24 C. J. S., Criminal Law, section 2000, page 1247, the text states: "Generally, when a statute prescribes the punishment of imprisonment without specifying the place thereof, it implies imprisonment in the common jail or prison of the county, rather than in the penitentiary, * * *."

Brooks v. People, 14 Colo. 413, 415, 24 P. 553, states: "It will be noticed that the statute upon which this prosecution is based is silent in reference to the place of confinement; and, unless some other act can be found making the offense a felony, it is clear that a conviction will only authorize a confinement in that institution considered the less penal, to-wit, the county jail. This is in accordance with a fundamental rule governing the construction of criminal statutes, which requires that, in case the statute admits equally of two constructions, that which is the more favorable to the defendant is to be preferred; and when the statute is silent as to the place of imprisonment, there being county jails for persons convicted of misdemeanors, and a penitentiary for those guilty of higher crimes, the former, rendering the punishment less severe, must be selected."

In the language of Gherna v. State, 16 Ariz. 344, 354, 146 P. 494, 499, Ann. Cas. 1916D 94, 99: "There is also a rule that where a statute is silent as to the place of imprisonment, and any doubt exists as to whether it should be in the penitentiary or county or local jail, the defendant should have the benefit of the doubt and be incarcerated in the county or local jail."

In Ex parte Cain, 20 Okla. 125, 132, 93 P. 974, 976, the court said: "The word 'imprisonment' means imprisonment in the county jail or local prison unless expressed to be in the penitentiary."

In Walden v. State, 50 Fla. 151, 39 So. 151, defendant was convicted of carnal knowledge of an unmarried female under eighteen. The penalty provided was imprisonment not more than ten years or a fine not exceeding $2,000, or both. Held imprisonment should be jail under a statute providing imprison-

ment should be in jail unless expressly directed to be in the penitentiary.

People v. Hightower, 414 Ill. 537, 112 N.E.2d 126, 129, states the omission of place of confinement in a penal statute raises a conclusive presumption that the confinement should be in the county jail.

Among other decisions are State v. Toy, 65 Mont. 230, 211 P. 303; Commonwealth ex rel. Stuckey v. Burke, 165 Pa. Super. 637, 70 A.2d 466, 467; State v. Masteller, 232 Minn. 196, 45 N.W.2d 109.

Ex parte Schiaffino,. 70 Cal. App. 65, 66, 232 P. 719, involved a conviction under a statute which provided for punishment " 'by imprisonment for a term not less than twenty-five nor more than forty years' ", but did not specify the place of confinement or declare the crime a felony. Holding the offense must be deemed a misdemeanor punishable by imprisonment in the county jail the court stated: "Though it seems an absurdity that one convicted of a crime which is punishable by imprisonment for not less than 25 years should be confined in a county jail rather than in the state prison, the language of the section does not permit any other interpretation."

This decision was overruled by Ex parte Wilson, 196 Cal. 515, 521, 238 P. 359, 361, on the ground another section of the same statute stated burglary was punishable by imprisonment in the state prison, that this offense, Burglary with Explosives, was burglary more aggravated in character, and that the various sections should be read together and construed as though constituting a single section. The court took into consideration that the quantum of the punishment, 25 to 40 years, bore no natural nor reasonable relation to the kind of punishment contended for. However, the decision stated, "It may be conceded that under a statute ŏmitting to declare the offense therein defined to be a felony and which does not provide that the punishment to be inflicted shall be incarceration in a state prison, only misdemeanor punishment can be imposed."

The Iowa statute entitled "Bribery in Athletic Contests" was, by the Code Editor, placed in chapter 739, Code of Iowa, 1954, entitled, "Bribery and Corruption." Other offenses in that chapter include misdemeanors and felonies. Nothing in any

other section of the chapter tends to indicate this offense is a felony. Although there are no constitutional or statutory provisions specifically limiting it, no Iowa statute, called to our attention, provides for a jail sentence of more than one year for a single offense. However, the Pennsylvania statute, with the same stated penalties as in this case, makes the offense a misdemeanor. Hence, the relation the quantum of punishment would bear to the kind of punishment (a jail sentence) should not be considered altogether unreasonable.

The rule is well settled that criminal statutes are to be strictly construed, and doubts, if any, resolved in favor of the accused. State v. Hill, 244 Iowa 405, 57 N.W.2d 58, and citations; State v. Hansen, 244 Iowa 145, 55 N.W.2d 923. In the light of that rule we are constrained to hold the language of Code section 739.12 makes its violation a misdemeanor rather than a felony. Consequently, the sentence imposed upon appellant was erroneous. Under the circumstances this court will remand the case for correct judgment against and sentence of appellant. State v. Barlow, 242 Iowa 714, 46 N.W.2d 725, and citations; State v. Tucker, Iowa, 24 N.W.2d 460, and citations.

Therefore, the part of the judgment adjudging that appellant be committed to the Men's Reformatory at Anamosa for an indeterminate period is set aside and the cause is remanded to Polk District Court for judgment sentencing appellant to pay such fine, not exceeding ten thousand dollars, or undergo such imprisonment in the county jail, not exceeding ten years, or both, with costs, as the trial court may determine is proper. —Modified, affirmed and remanded.

All JUSTICES concur.