# In the Iowa Supreme Court

No. 25–0182

Submitted December 16, 2025—Filed June 12, 2026

**Charlene Jorgensen** and **Michael Jorgensen,**

Appellees,

vs.

**Adam B. Smith, Adam B. Smith, M.D., P.C.,** and **Tri-State Specialists, LLP,**

Appellants,

Appeal from the Iowa District Court for Woodbury County, Robert D. Tiefenthaler, judge.

In this second interlocutory appeal, defendant healthcare providers seek review of the denial of their second and third motions for summary judgment. **Affirmed.**

May, J., delivered the opinion of the court, in which all justices joined.

Jeff W. Wright (argued) and Zack A. Martin (until withdrawal) of Heidman Law Firm, P.L.L.C., Sioux City, for appellants.

Michael D. Bornitz (argued) of Cutler Law Firm, LLP, Sioux Falls, SD, and William D. Sims of Northern Plains Justice, LLP, Sioux Falls, SD, for appellees.

**May, Justice.**

The plaintiffs allege negligence by a surgeon and his employers. The defendants have sought and received two interlocutory appeals. Both appeals have centered on Iowa Code section 147.140 (2020), our certificate of merit affidavit statute. In the first appeal, "*Jorgensen I*," we affirmed the district court's denial of the defendants' motion for partial summary judgment. *Jorgensen v. Smith* (*Jorgensen I*), 2 N.W.3d 868, 880 (Iowa 2024). Then, after remand, the defendants filed two new summary judgment motions, both of which were denied. Now, in this second appeal, the defendants again ask us to reverse and remand for entry of summary judgment. We decline this request based on the law-of-the-case doctrine, which prohibits us from reexamining decisions we made in a prior appeal in the same case. The prohibition extends both to "issues raised and passed on in a prior appeal" and also to " 'matters necessarily involved in the determination of a question' settled in a prior appeal." *Lee v. State*, 874 N.W.2d 631, 646 (Iowa 2016) (second quoting *In re Lone Tree Cmty. Sch. Dist.*, 159 N.W.2d 522, 526 (Iowa 1968)). The defendants' current arguments fall within these prohibited categories. Therefore, we do not reach the merits of those arguments. We affirm and remand for trial.

### I. Factual and Procedural Background.

**A. The Jorgensens' Suit.** Defendant Dr. Adam Smith performed two breast reduction surgeries on Charlene Jorgensen, one in 2016 and one in 2018. In May 2020, Charlene and her husband (the Jorgensens) brought this suit. The Jorgensens allege that the 2018 surgery was botched and that Charlene was left disfigured.

The Jorgensens' petition names three defendants: Dr. Smith and his employers, Adam B. Smith, M.D., P.C. (Smith P.C.), and Tri-State Specialists, LLP

(Tri-State). The Jorgensens allege different claims against each defendant. As to Dr. Smith, the Jorgensens allege medical negligence and lack of informed consent. As to Smith P.C., the Jorgensens allege medical negligence and respondeat superior. As to Tri-State, the Jorgensens allege respondeat superior and negligent "hiring, supervising, employing, and/or retaining." We refer to this last claim as a negligent retention claim. It is based on the idea that because Tri-State knew Dr. Smith was unfit to practice surgery, Tri-State was negligent in failing to discharge Dr. Smith before he could harm Charlene through his own negligence in the 2018 surgery.

**B. Dr. Jewell's Certificate.** In June 2020, the defendants responded to the Jorgensens' suit by filing answers. The filing of these answers started a sixty-day clock under Iowa Code section 147.140, Iowa's certificate of merit affidavit statute. In some suits against healthcare providers, section 147.140 requires the plaintiff to serve a certificate of merit affidavit within "sixty days of the defendant's answer." *Id.* § 147.140(1)(*a*). The certificate of merit affidavit must contain an expert's opinion that the applicable standard of care was breached. *Id.* § 147.140(1)(*b*)(2).

The Jorgensens timely served a document entitled "Certificate of Merit Affidavit," which was signed by Dr. Mark Jewell, a plastic surgeon. We refer to this document as the "certificate" or "Dr. Jewell's certificate."

In the certificate, Dr. Jewell stated that he had reviewed medical records relating to the 2018 surgery and follow-up care. He also stated that "to a reasonable degree of [his] medical surgical experience and knowledge[, Dr. Smith] breached the standard of care with respect to" both the 2018 surgery and the follow-up care.

But Dr. Jewell's certificate did not say whether Dr. Smith was unfit to practice surgery or whether Tri-State should have discharged Dr. Smith prior to

Charlene's 2018 surgery. Nor did the Jorgensens serve a separate certificate of merit affidavit addressing those topics.

**C. Trial Expert Designation.** Three months later, in September 2021, the Jorgensens designated a different plastic surgeon, Dr. Edwards, to testify at trial. In his report, Dr. Edwards opined "that Dr. Smith fell below the accepted standard of care in the treatment of [Charlene] in the evaluation, planning[,] and conduct of her" surgical care.

Dr. Edwards also mentioned that he did "not feel that Dr. Smith had a good grasp of the fundamentals necessary" to successfully complete the 2018 reduction surgery for Charlene. But Dr. Edwards did not opine that Dr. Smith was unfit to practice plastic surgery. Nor did Dr. Edwards opine that Tri-State should have discharged Dr. Smith prior to the 2018 surgery. Nor did the Jorgensens designate a separate expert addressing those topics.

**D. The First Motion for Summary Judgment.** In December 2021, the defendants moved for partial summary judgment as to the Jorgensens' negligent retention claim. Their motion was based primarily on the Jorgensens' alleged failure to comply with section 147.140, although it also raised issues concerning section 668.11.

With regard to section 147.140, the defendants noted that the Jorgensens had submitted Dr. Jewell's "certificate of merit affidavit," which addressed *Dr. Smith's* alleged *surgical* negligence. Conversely, the defendants emphasized, Dr. Jewell's "certificate of merit affidavit" did not address any negligent *retention* by Tri-State. Therefore, the defendants argued, section 147.140 required dismissal of the Jorgensens' negligent retention claim.[1]

---

[1]Here's an excerpt from the defendants' brief in support of their motion:

> The certificate of merit affidavit filed by Plaintiffs is silent regarding any negligence of Tri-State. In it, Dr. Jewell's sole allegation of negligence is that

In addition to their section 147.140 arguments, the defendants also argued that the Jorgensens' negligent retention claim should be dismissed under Iowa Code section 668.11, which requires parties to "professional liability case[s] brought against a licensed professional" to designate trial experts within specified time frames. Here again, the defendants emphasized the differences between how the Jorgensens treated their claims against Dr. Smith, on the one hand, and their negligent retention claim, on the other hand. Although the Jorgensens had timely designated a trial expert to testify about Dr. Smith's alleged surgical negligence, the Jorgensens had not designated a trial expert to testify about Tri-State's alleged negligence in retaining Dr. Smith. Therefore, the defendants argued, section 668.11 also required dismissal of the negligent retention claim.

**E. The Ruling and Subsequent Appeal.** The district court denied the defendants' partial summary judgment motion. The defendants then sought interlocutory review, which our court granted.

**F. Our Opinion in the First Appeal.** In February 2024, we issued an opinion affirming the district court's denial of summary judgment. *Jorgensen I*, 2 N.W.3d at 880. We observed that Iowa Code section 147.140 (2018) does not apply to all claims against healthcare providers. Rather, section 147.140 only applies to a limited subset of those claims. And that subset is defined by four

---

"*Adam Smith, M.D. breached the standard of care with respect to this* right breast 're-attaching' *surgery and the follow-up care* which he provided to [Plaintiff]." Dr. Jewell provides no opinion regarding Tri-State hiring, supervising, or retaining Dr. Smith.

As a result, Plaintiffs' certificate of merit affidavit is wholly deficient as to any direct claims against Tri-State.

Defs.' Br. in Supp. of Mot. for Partial Summ. J. & Alt. Mot. to Bifurcate at 8–9, *Jorgensen v. Smith*, No. LACV192198 (Iowa Dist. Ct. Jan. 12, 2022), 2021 WL 12257650 (alteration in original) (citations omitted).

criteria. *Id.* at 873; *see Struck*, 973 N.W.2d 533, 540 (Iowa 2022). One of the criteria is that the claim must be "based upon the alleged negligence in the practice of that profession or occupation or in patient care." *Jorgensen I*, 2 N.W.3d at 873 (quoting Iowa Code § 147.140(1)(*a*) (2018)). As to this criterion, the defendants' only argument was that the negligent retention claim was based on alleged negligence in the practice of an "occupation."[2] *Id.* at 874–75. We rejected this argument. So we concluded that section 147.140 does not apply. *Id.* at 877.

Our section 147.140 analysis did not end there, however. We went on to address *Struck v. Mercy Health Services-Iowa Corp.*, 973 N.W.2d 533, on which the defendants had placed substantial reliance. *Jorgensen I*, 2 N.W.3d at 877. In *Struck*, we concluded that a plaintiff's negligent retention claim failed because of insufficient compliance with section 147.140. 973 N.W.2d at 544. As *Jorgensen I* explained, though, we saw "important differences between this case and *Struck*." 2 N.W.3d at 877. *Struck* recognized that negligent retention claims are really compound claims that require *not only* (1) a showing that the employer was negligent in retaining a particular employee-caregiver *but also* (2) a showing that the employee-caregiver was negligent. *See* 973 N.W.2d at 544. This second showing requires the plaintiff to "prove a case within a case," *Struck* said. *Id.* (quoting *Kiesau v. Bantz*, 686 N.W.2d 164, 172 (Iowa 2004), *overruled on other grounds by, Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016)). And, ultimately, this "case within a case" requirement was crucial to the outcome in *Struck*. In fact, the *Struck* court's decision to dismiss the negligent retention claim "*turned on* the plaintiff's failure to serve certificate of merit affidavits

---

[2]In the district court, the defendants had raised other arguments as well. Some of those arguments were also mentioned at various points of the appeal. But only the "occupation" argument was developed in their appellants' brief.

concerning the negligence *of employee-caregivers*, the 'case within a case.' " *Jorgensen I*, 2 N.W.3d at 877 (first emphasis added) (quoting *Struck*, 973 N.W.2d at 544). But that aspect of *Struck* also made it distinguishable from the Jorgensens' case. "[T]here is no similar case-within-a-case problem before us here," we said. *Id.* "Unlike in *Struck*," we said, "it is undisputed that the Jorgensens timely served a certificate of merit affidavit concerning the negligence of the relevant employee-caregiver, Dr. Smith." *Id.* And so we found *Struck* to be "plainly distinguishable." *Id.* at 878.

We then went on to address the question of whether section 668.11 barred the Jorgensens' negligent retention claims. We decided it did not because section 668.11 only applies to claims against "licensed professional[s]," and, from what we could tell, Tri-State did not qualify as a licensed professional. *Id.*

Finally, having resolved the "procedural issues concerning the expert-disclosure requirements of sections 147.140 and 668.11," we went on to offer some guidance concerning the parties' ongoing dispute about "what expert testimony will be necessary for trial." *Id.* We offered this guidance because the issue had been addressed at length in the district court and the parties' appellate briefs, and because "we expect[ed] the issue" would "arise again on remand as the case proceeds to trial." *Id.*

**G. Aftermath.** Our *Jorgensen I* opinion was filed on February 9, 2024. Under our rules, any party could have moved for a rehearing "within 14 days after the filing of the" opinion. Iowa R. App. P. 6.1205(1). But no party moved for a rehearing.

Procedendo issued on March 14, 2024. Jurisdiction returned to the district court. *See Shontz v. Mercy Med. Ctr.-Clinton, Inc.*, 33 N.W.3d 598, 602–03 (Iowa 2026) (discussing the effect of procedendo).

**H. The Second Summary Judgment Motion.** About two months later, on May 23, Tri-State once again moved for partial summary judgment as to the negligent retention claim. Through this motion, Tri-State once again argued that section 147.140 applied to the Jorgensens' negligent retention claim and required its dismissal. We call this the "second summary judgment motion."

**I. The Third Summary Judgment Motion.** About two weeks later, on June 6, all the defendants filed a motion for summary judgment as to *all* of the Jorgensens' claims. We call this the "third summary judgment motion."

In this motion, the defendants argued that because Dr. Jewell's certificate was not a true affidavit, it was not sufficient under Iowa Code section 147.140 (2020). Therefore, the defendants argued, summary judgment was required as to all of the Jorgensens' claims.

**J. The Resistances.** The Jorgensens resisted these motions on several grounds, including the law-of-the-case doctrine. The Jorgensens pointed to prior instances, including some from the first appeal, where the defendants conceded that Dr. Jewell's certificate was sufficient.

**K. New Rulings and a Second Appeal.** The district court denied the defendants' second and third summary judgment motions. The defendants requested interlocutory review, which we granted.

**II. Analysis.**

**A. The Law-of-the-Case Doctrine.** Because the law-of-the-case doctrine requires us to affirm without reaching the merits of the defendants' present arguments, we begin our analysis with an outline of that doctrine. In this context,[3] the law of the case refers to a doctrine that "prevents us from

---

[3]The phrase "law of the case" is used differently in different contexts. The most prevalent use, perhaps, involves sufficiency-of-the-evidence reviews following jury trials. We regularly say that when there are no objections to the jury instructions, those instructions are the law of the

reexamining decisions we have made in a prior appeal of the same case." *Godfrey v. State*, 962 N.W.2d 84, 100 (Iowa 2021). Under this doctrine, "the legal principles announced and the views expressed by" this court in a prior opinion, "right or wrong, are conclusively binding, throughout further progress of the case, upon the litigants, the trial court upon remand and this court in later appeals." *Des Moines Bank & Tr. Co. v. Iowa S. Utils. Co. of Del.*, 61 N.W.2d 724, 726 (Iowa 1953). We have confirmed this on many occasions. *See, e.g.*, *Godfrey*, 962 N.W.2d at 100; *First Am. Bank v. Fobian Farms, Inc.*, 906 N.W.2d 736, 750–51 (Iowa 2018); *Lee*, 874 N.W.2d at 646; *State v. Ragland*, 812 N.W.2d 654, 658 (Iowa 2012); *Winnebago Indus., Inc. v. Haverly*, 727 N.W.2d 567, 573 (Iowa 2006); *State ex rel. Goettsch v. Diacide Distribs., Inc.*, 596 N.W.2d 532, 537 (Iowa 1999); *State v. Grosvenor*, 402 N.W.2d 402, 405 (Iowa 1987); *see also Lawson v. Fordyce*, 21 N.W.2d 69, 74 (Iowa 1945) (collecting prior opinions as support for the view that we are "bound by the decision and rulings on the first appeal of a case" no matter whether they are "right or wrong").

So, as we have said many times, the "issues raised and passed on in a prior appeal" will not be reconsidered in a subsequent appeal. *Lee*, 874 N.W.2d at 646; *Cawthorn v. Cath. Health Initiatives Iowa Corp.*, 806 N.W.2d 282, 286–87 (Iowa 2011); *Bahl v. City of Asbury*, 725 N.W.2d 317, 321 (Iowa 2006). *But see, e.g.*, *Grosvenor*, 402 N.W.2d at 405 (noting exceptions, such as the situation where "the facts before the court upon the second trial are materially different from those appearing upon the first").

Additionally, "matters necessarily involved in the determination of a question" in a prior appeal are also "settled" for purposes of any "subsequent

---

case for purposes of our sufficiency review. *See, e.g.*, *State v. Schiebout*, 944 N.W.2d 666, 671 (Iowa 2020).

appeal." *Des Moines Bank & Tr. Co.*, 61 N.W.2d at 726. This, too, we have said many times. *See, e.g.*, *Freer v. DAC, Inc.* (*Freer II*), 951 N.W.2d 6, 8 (Iowa 2020) (per curiam); *In re Lone Tree Cmty. Sch. Dist.*, 159 N.W.2d at 526; *Mass v. Mesic*, 142 N.W.2d 389, 393 (Iowa 1966); *State v. Di Paglia* (*Di Paglia II*), 78 N.W.2d 472, 472–73 (Iowa 1956); *see also Brewer-Strong v. HNI Corp.*, 913 N.W.2d 235, 246 (Iowa 2018) ("Although '[t]he doctrine generally applies only to issues raised and passed on in a prior appeal,' it also 'extends to "matters necessarily involved in the determination of a question" settled in a prior appeal for purposes of subsequent appeals.' " (alteration in original) (quoting *Lee*, 874 N.W.2d at 646)); *Lawson*, 21 N.W.2d at 73 ("Like matters necessarily involved in the determination of a question are settled by the decision when the same are again presented on a subsequent appeal." (quoting 3 Am. Jur. § 994, at 549)).

**B. The Second Summary Judgment Motion.** With these general principles in mind, we move to the specific issues before us. We start with the second partial summary judgment motion. Through that motion, Tri-State argued that section 147.140 applies to the Jorgensens' negligent retention claim and, indeed, required its dismissal. But in the prior appeal, *Jorgensen I*, that very same issue was expressly raised and decided. 2 N.W.3d at 873. We expressly considered whether section 147.140 applied to the negligent retention claim. *Id.* We expressly considered the four criteria that must be met before section 147.140 can apply. *Id.* We expressly found that the third criterion—whether the claim is "based upon the alleged negligence in the practice of that profession or occupation or in patient care"—was not satisfied. *Id.* at 874–75, 877 (quoting Iowa Code § 147.140(1)(*a*) (2018)). Therefore, we expressly concluded that "section 147.140 does not apply to the Jorgensens' negligent retention claim."

*Id.* at 877. And, as mentioned, we rejected the defendants' argument that our prior decision in *Struck* required a different outcome under section 147.140.

Our conclusion in *Jorgensen I* that section 147.140 does not apply to the Jorgensens' negligent retention claim is now the law of the case. It forecloses Tri-State's effort to relitigate the question of whether section 147.140 applies to that negligent retention claim.

We recognize that Tri-State is making different legal arguments now. In the prior appeal, the defendants argued that section 147.140's third criterion was met because the negligent retention claim was "based upon the alleged negligence in . . . that *occupation.*" *Id.* at 874–75 (emphasis added) (quoting Iowa Code § 147.140(1)(*a*) (2018)). Conversely, in this appeal, Tri-State is now arguing that the third criterion is met because the negligent retention claim is "based upon the alleged negligence in the practice of that *profession . . .* or *in patient care.*" (Emphasis added.) Because those *arguments* weren't raised or ruled on in the first appeal, Tri-State contends, the law of the case doesn't apply.

We disagree. The law-of-the-case doctrine "prevents the presentation of cases by the piecemeal." *Lawson*, 21 N.W.2d at 77. It prevents parties from eking their arguments out, raising a few in one appeal and then a few more later. Rather, when an issue first comes before an appellate court, the parties must raise all of their arguments about that issue, not just some. As a federal district judge said in an analogous context, parties must take "not only their 'best shot' but all of their shots" at the first opportunity. *Singh v. Superintending Sch. Comm.*, 593 F. Supp. 1315, 1318 (D. Me. 1984) (discussing district judge review of proceedings before magistrate judges). Arguments that aren't raised in the first appeal will not be considered in later appeals.

We recently applied this rule in *Freer v. DAC, Inc.* (*Freer II*), a wrongful death case. 951 N.W.2d at 8. During jury deliberations, the parties reached a high-low settlement agreement: $100,000 minimum, $1 million maximum. *Id.* at 7. The jury returned a defense verdict, and the district court entered judgment dismissing the case. *Id.* But then, instead of demanding that the defendant pay the $100,000 due under the high-low agreement, the plaintiffs filed a motion for new trial. *Id.* The defendant responded by moving for enforcement of the high-low agreement. *Id.* At a hearing on the motions, the district court advised that it would grant the defendant's enforcement motion and strike the plaintiffs' motions. *Id.* But then, before the district court could issue a written order, the plaintiffs appealed. *Id.* In that first appeal, the plaintiffs renewed their pleas for a new trial. *See Freer v. DAC, Inc.* (*Freer I*), 929 N.W.2d 685, 686–87 (Iowa 2019). But we concluded that the plaintiffs failed to present any preserved issues, and we affirmed the judgment dismissing the case. *Freer II*, 951 N.W.2d at 8. After we issued that opinion, the plaintiffs filed a new motion in district court. *Id.* This time, in a sort of role reversal, the plaintiffs asked the district court to *enforce* the high-low agreement. *Id.* The district court declined, citing this court's opinion in the first appeal, which had affirmed the district court's prior dismissal. *Id.* The plaintiffs then brought a second appeal, this time arguing that the high-low agreement should be enforced. *Id.* We rejected that argument on law-of-the-case grounds:

> [The plaintiffs'] new appeal is an attack on the same [take-nothing judgment] that we already affirmed in the first appeal, now just asserting different grounds. "It is the established rule that appeals may not be by piecemeal." [The plaintiffs] makes no attack on the judgment that couldn't have been raised in the prior appeal. Having challenged the judgment in the prior appeal and having received an adverse ruling, "such is the law of the case and may not again be argued, even though a different reason for so claiming is now urged."

*Id.* (citation omitted) (quoting *Di Paglia II*, 78 N.W.2d at 473).

These same principles apply even when a criminal defendant's constitutional rights are at stake. In *State v. Di Paglia* (*Di Paglia I*), a defendant was convicted of "bribery in athletic contests" after attempting to fix the score in a basketball game between Drake and Iowa State. 71 N.W.2d 601, 602 (Iowa 1955). In his first appeal, the defendant raised a host of arguments for reversal. *Id.* at 602–07. They included an argument that the "bribery in athletic contests" statute violated certain provisions of the Iowa Constitution and an argument that the district court wrongly construed that statute as creating a felony. *Id.* at 604–05. We rejected most of the defendant's arguments, including his constitutional challenges. *Id.* at 604. But we agreed that the statute created a misdemeanor, not a felony. *Id.* at 607. So we remanded for resentencing. *Id.* After his resentencing, the defendant appealed again. *Di Paglia II*, 78 N.W.2d at 472. In that second appeal, the defendant once again claimed that the "bribery in athletic contests" statute violated the Iowa Constitution. *Id.* This time, though, the defendant relied on different provisions of that constitution. *Id.* at 473. We refused to consider those new constitutional arguments. *Id.* We noted that the defendant had already attacked "the validity of" the statute in the first appeal. *Id.* "Having raised that question on the former appeal and having had a determination that such statute was constitutional, such is the law of the case and may not again be argued, even though a different reason for so claiming is now urged." *Id.*

So too here. In this second appeal, Tri-State is again arguing that section 147.140 applies to the Jorgensens' negligent retention claim. But that very issue was squarely before us and squarely determined in *Jorgensen I*, where we "conclude[d] that section 147.140 does not apply to the Jorgensens' negligent

retention claim." 2 N.W.3d at 877. And although Tri-State is now asserting new and different statutory arguments in hopes that we will reach a different conclusion, *Di Paglia II* and *Freer II* preclude us from considering those new arguments. Our determination in *Jorgensen I* "is the law of the case and may not" be reviewed again, "even though a different reason . . . is now urged." *Freer II*, 951 N.W.2d at 8 (quoting *Di Paglia II*, 78 N.W.2d at 473).

**C. The Third Summary Judgment Motion.** We turn now to the defendants' third summary judgment motion. Here, the defendants argue that because Dr. Jewell's certificate was not a true affidavit, it did not satisfy Iowa Code section 147.140, and, therefore, the Jorgensens' suit should be dismissed "entirely." This argument is not implausible. After all, if the Jorgensens failed to provide a proper certificate of merit affidavit addressing Dr. Smith's negligence, then section 147.140(6) would ordinarily require dismissal of negligence claims against Dr. Smith as well as any vicarious liability claims based on Dr. Smith's negligence. Moreover, as already explained, our *Struck* decision made it clear that a negligent retention claim can only survive if there is a viable "case within a case," that is, a viable negligence case against the healthcare provider who was wrongfully retained. 973 N.W.2d at 544. Therefore, if fatal deficiencies in Dr. Jewell's certificate required dismissal of the claims against Dr. Smith, those same deficiencies would also require dismissal of the negligent retention claim. *Id.*; *see also Jorgensen I*, 2 N.W.3d at 877 (discussing *Struck*).

We do not reach the merits of these arguments, though, because they are foreclosed by the law of the case. As explained, the law-of-the-case doctrine applies both to (1) "issues raised and passed on in a prior appeal" and also (2) " 'matters necessarily involved in the determination of a question' settled in a prior appeal for purposes of subsequent appeals." *Lee*, 874 N.W.2d at 646

(second quoting *In re Lone Tree Cmty. Sch. Dist.*, 159 N.W.2d at 526). Of course, the first category— "issues raised and passed on in a prior appeal"—does not apply to the defendants' current attack on Dr. Jewell's certificate. It does not apply because, in *Jorgensen I,* there was no debate about whether Dr. Jewell's certificate was technically sufficient under Iowa Code section 147.140. Rather, it was simply *undisputed* that Dr. Jewell's certificate was sufficient—at least for purposes of the claims against Dr. Smith. *Jorgensen I*, 2 N.W.3d at 872, 877. Even so, as will be explained, the sufficiency of that certificate was still a "matter[] necessarily involved in the determination of a question" settled in a prior appeal, namely, whether or not we should reverse for dismissal of the negligent retention claim. *Lee*, 874 N.W.2d at 646 (quoting *In re Lone Tree Cmty. Sch. Dist.*, 159 N.W.2d at 526). Therefore, under the law-of-the-case doctrine, the sufficiency of Dr. Jewell's certificate cannot be relitigated now.

As we have discussed, in *Jorgensen I,* the defendants contended that section 147.140 barred the plaintiffs' negligent retention claim. 2 N.W.3d at 872–73. As part of their advocacy, the defendants relied heavily on our decision in *Struck,* in which we affirmed the district court's dismissal of a plaintiff's claims— including a negligent retention claim—based on section 147.140. 973 N.W.2d at 544–45; *see also* Br. for Defs.-Appellants at 16–22, 27, 37–38, *Jorgensen I*, 2 N.W.3d 868 (No. 22–0576), 2022 WL 20834181, at *16–22, *27, *37–38 (relying on *Struck*); Br. for Pls.-Appellees at 40–45, *Jorgensen I*, 2 N.W.3d 868 (No. 22–0576), 2022 WL 20834183, at *40–45 (distinguishing *Struck*); Reply Br. for Defs.-Appellants at 6, 10–14, *12–14, *Jorgensen I*, 2 N.W.3d 868 (No. 22–0576), 2022 WL 20834184, at *6, *10–14 (arguing for the application of *Struck*); Oral Argument at 0:50, *Jorgensen I*, 2 N.W.3d 868 (No. 22–0576), https://www.youtube.com/watch?v=oWIrzR_lQZ8 (asking the court to follow

*Struck*). And so, to decide the merits of the defendants' first appeal, it was necessary for us to determine whether *Struck* was distinguishable. *See* Br. for Pls.-Appellees at 41, *Jorgensen I*, 2 N.W.3d 868 (No. 22–0576); Reply Br. for Defs.-Appellants at 13, *Jorgensen I*, 2 N.W.3d 868 (No. 22–0576). As the defendants bluntly observed in their reply brief: "Plaintiffs attempt, *as they must,* to distinguish their claim from the claims at issue in *Struck* . . . ." Reply Br. for Defs.-Appellants at 13, *Jorgensen I*, 2 N.W.3d 868 (No. 22–0576) (emphasis added). That effort was necessary because—*if* Struck *had not been distinguishable*—then stare decisis would have called for reversal in the defendants' favor. *Id.*

Ultimately, we concluded that "*Struck* is plainly distinguishable." *Jorgensen I*, 2 N.W.3d at 878. We reasoned:

> *Struck* turned on the plaintiff's failure to serve certificate of merit affidavits concerning the negligence *of employee-caregivers*, the "case within a case." And there is no similar case-within-a-case problem before us here. Unlike in *Struck*, it is undisputed that the Jorgensens timely served a certificate of merit affidavit concerning the negligence of the relevant employee-caregiver, Dr. Smith.

*Id.* at 877 (citations omitted).

As this excerpt shows, the sufficiency of Dr. Jewell's certificate was indeed crucial to our resolution of the first appeal. Because the defendants agreed that Dr. Jewell's certificate was sufficient as to the Dr. Smith claims, we concluded that *Struck* was distinguishable, and, therefore, *Struck* created no basis for us to reverse. Conversely, if the defendants had shown that Dr. Jewell's certificate was insufficient as to the Dr. Smith claims, *Struck* and stare decisis would have called for the opposite outcome. And so the sufficiency of Dr. Jewell's certificate was certainly among the "matters necessarily involved" in the decision in the first appeal. *In re Lone Tree Cmty. Sch. Dist.,* 159 N.W.2d at 526 (quoting 3 Am. Jur. § 994, at 549). It therefore falls within the law-of-the-case doctrine.

We should add that the defendants did not merely agree that Dr. Jewell's certificate was sufficient as to the Dr. Smith claims. Rather, the defendants used its sufficiency to show *contrast. See* Br. for Defs.-Appellants at 14–15, *Jorgensen I*, 2 N.W.3d 868 (No. 22–0576). They used it to show the *difference* between (1) how the plaintiffs treated their Dr. Smith claims, on the one hand, and (2) how the plaintiffs treated their negligent retention claim, on the other hand. *Id.* They pointed out that although the plaintiffs had adequately supported their claims against Dr. Smith by submitting Dr. Jewell's certificate, the plaintiffs had done nothing of the sort for their negligent retention claim, which instead was left unsupported by any certificate of its own. *Id.* Ultimately, we adopted the defendants' view that, indeed, Dr. Jewell's certificate was sufficient to support the Dr. Smith claims. That view led us to distinguish *Struck* and, therefore, not to reverse. *Jorgensen I*, 2 N.W.3d at 877–78. We cannot reconsider those decisions now.

This situation is analogous to *Godfrey v. State*, an employment discrimination case that involved several appeals. 962 N.W.2d at 96. In one of those appeals, the defendants argued—and our court accepted—that because Iowa Civil Rights Act (ICRA) claims were available to the plaintiff, certain constitutional claims were not available. *Id.* at 99–100 (explaining the court's voting alignment). In a later appeal, the defendants argued that ICRA claims were unavailable because the plaintiff did not meet ICRA's statutory definition of an "employee." *Id.* at 99. We refused to consider that argument, partially based on the law-of-the-case doctrine. *Id.* at 100. Because the availability of ICRA claims had been important to our determination of the prior appeal, we would not reconsider the availability of ICRA claims in a subsequent appeal. *Id.* at 100–01.

Likewise here. In *Jorgensen I*, the defendants took the position that Dr. Jewell's certificate was a "certificate of merit affidavit" that was sufficient as to the Dr. Smith claims.[4] We adopted the same view, and it was important to our determination of the *Jorgensen I* appeal. Therefore, as in *Godfrey*, we will not reconsider it now.

### III. Resolution.

The law-of-the-case doctrine prohibits evaluation of the issues raised in the defendants' second and third summary judgment motions. We affirm the district court's denial of those motions. We remand for trial.

**Affirmed.**

---

[4]We recognize the defendants' argument that in *Jorgensen I*, they were only acknowledging the existence and timeliness of Dr. Jewell's certificate, but not its sufficiency. As explained, we did not (and do not) understand the defendants' position to have been so nuanced. We also note that although the defendants now question the sufficiency of Dr. Jewell's certificate, their only claim of insufficiency is that the certificate is not a true affidavit. *See* Iowa Code § 622.85 ("An affidavit is a written declaration made under oath, without notice to the adverse party, before any person authorized to administer oaths within or without the state."). Yet, both before and during the *Jorgensen I* appeal, the defendants repeatedly said that Dr. Jewell's certificate *is* an affidavit. For example, in their statement of undisputed facts in support of their first summary judgment motion, the defendants referred to Dr. Jewell's certificate as "a certificate of merit affidavit" that "was filed by Dr. Mark Jewell," as "Dr. Jewell's file-stamped certificate of merit affidavit," and as "Dr. Jewell's affidavit." Defs.' Statement of Undisputed Material Facts in Supp. of Mot. for Partial Summ. J. at 2, *Jorgensen v. Smith*, No. LACV192198 (Iowa Dist. Ct. Jan. 12, 2022). Those same "affidavit" comments appeared verbatim in the defendants' brief in support of their first summary judgment motion. Defs.' Br. in Supp. of Mot. for Partial Summ. J. & Alt. Mot. to Bifurcate at 2, 9, *Jorgensen*, No. LACV192198, 2021 WL 12257650. Later, in their reply in support of their first summary judgment motion, the defendants referred to Dr. Jewell's certificate as the "certificate of merit affidavit regarding Dr. Smith." Defs.' Reply Re: Mot. for Partial Summ. J. & Alt. Mot. to Bifurcate at 6 n.4, *Jorgensen v. Smith*, No. LACV192198 (Iowa Dist. Ct. Jan. 19, 2022), 2022 WL 22706089. Later still, in their appellants' brief in *Jorgensen I*, the defendants twice referred to Dr. Jewell's certificate as a "certificate of merit affidavit." Br. for Defs.-Appellants at 10, *Jorgensen I*, 2 N.W.3d 868 (No. 22–0576). And then, after our *Jorgensen I* opinion was issued on February 9, 2024, the defense continued to refer to Dr. Jewell's certificate as an affidavit. On May 23, 2024, defendant Tri-State filed a district court brief in support of the second summary judgment motion—one of the motions that is now before us in this appeal. In that brief, Tri-State described Dr. Jewell's certificate as a "certificate of merit affidavit." Def. Tri-State Specialists, LLP's Br. in Supp. of Mot. for Summ. J. at 2, *Jorgensen v. Smith*, No. LACV192198 (Iowa Dist. Ct. May 23, 2024). Tri-State also noted that "Dr. Jewell's affidavit makes no allegations regarding any independent breach of the standard of care by Tri-State." *Id.*